[No. 49515-7.   En Banc.   February 16, 1984.]

LESLIE H. SOUTHWELL, ET AL, *Respondents,* v. WIDING TRANSPORTATION, INC., ET AL, *Petitioners.*

Dore and Dolliver, JJ., dissent by separate opinion.

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *Ronald H. Mentele* and *Danferd W. Henke,* for petitioners.

*Betts, Patterson & Mines, P.S.,* by *Paul D. Carey,* for respondents.

BRACHTENBACH, J.—This action involves a wrongful death claim that arose from facts surrounding the death, in the Province of British Columbia, Canada, of Mark Elmer Southwell (decedent), a British Columbia resident. The issue involves a choice of law. We are asked to choose between the conflicting laws of British Columbia and Washington.[1] Petitioners, Widing Transportation, Inc.

---

[1]British Columbia, Canada, law does not allow recovery for lost and future earnings, while Washington law does. *Compare* B.C. Rev. Stat. ch. 114, § 66(2)(c)

(Widing) and Robert L. Noble (Noble), claim that British Columbia law, which limits damages recoverable in wrongful death actions, governs the issue of damages in this case. Respondents, Leslie H. and Janet A. H. Southwell (Southwell), suing in both their individual capacities and as representatives of the decedent's estate, claim that Washington law, which allows unlimited recovery in wrongful death actions, should apply.

A brief statement of facts, or lack of facts, is necessary. Widing is an Oregon corporation with its principal place of business in Portland, Oregon. It maintains a trucking dispatch terminal and business office at Kent, Washington, known as the Midway terminal. On July 19, 1979, Noble, an employee of Widing and resident of Snohomish County, Washington, was dispatched from Midway in a flatbed truck owned by Widing. He was to pick up a load of steel castings from S. Madill, Ltd., a Canadian corporation, located in Nanaimo, British Columbia, Canada. After picking up the load and while en route to Washington, a steel casting escaped from the flatbed truck, striking and killing the decedent.

Southwell instituted this action in King County, Washington, seeking damages for the wrongful death of the decedent under RCW 4.20.010 and RCW 4.24.010. Their complaint alleged that:

V

. . . Mark Elmer Southwell died on July 19, 1979 from injuries suffered when, while operating a motorcycle . . . in West Vancouver, British Columbia, he was struck . . . by a . . . steel casting which escaped from the load of a Widing Transportation, Inc. flatbed truck loaded and being operated by Robert L. Noble . . .

. . .

VII

. . . decedent Mark Elmer Southwell died as a direct,

---

(1978) *and Child v. Stevenson,* [1973] 4 W.W.R. 322 *with Criscuola v. Andrews,* 82 Wn.2d 68, 507 P.2d 149 (1973), *and Hinzman v. Palmanteer,* 81 Wn.2d 327, 501 P.2d 1228 (1972).

proximate and foreseeable result of the negligence of defendant[s] Widing . . . and . . . Noble . . .

Widing and Noble answered, denying liability and asserting as an affirmative defense that the law of British Columbia governed this action. In their answer, they also brought a third party complaint against S. Madill, Ltd. and S. Madill, Inc.,[2] alleging that the employees of S. Madill, Ltd., negligently loaded the truck, and their negligence was the proximate cause of the decedent's death. In their third party complaint, Widing and Noble sought indemnification from Madill, and in the alternative, contribution.

Southwell's pretrial motion to strike Widing's affirmative defense was denied. The trial court framed its denial in terms of a final order. Southwell appealed this final order, arguing that negligent selection of a flatbed truck occurred in Washington[3] and, therefore, Washington law should apply. In an unpublished opinion, the Court of Appeals, relying on *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 555 P.2d 997 (1976), unanimously reversed the trial court and ordered Washington law to apply. *Southwell v. Widing Transp., Inc.*, noted at 33 Wn. App. 1049 (1982).

Widing's and Noble's motion for reconsideration was denied by the Court of Appeals. However, Judge Scholfield dissented from this second ruling on the ground that the record is not sufficient to allow the court to make the initial determinations that need to be made in order to make a proper conflicts of law analysis. We agree with the dissent and reverse the Court of Appeals and remand to the trial court for further action in compliance with this opinion.

Both parties argue that *Johnson* controls the ultimate resolution of this controversy. We agree. However, on the record before us, we are unable to make the factual analysis necessary to make a decision within the parameters enunci-

---

[2] S. Madill, Inc., is a Washington corporation affiliated with S. Madill, Ltd.

[3] Petitioner claims that respondent's allegation of negligence was raised for the first time on appeal and is therefore not properly part of the record before the court. Due to our disposition of this matter we need not address this assertion.

ated in *Johnson.*

In *Johnson,* we stated unequivocally that the general principles enunciated in the Restatement (Second) of Conflict of Laws §§ 6, 145 (1971) (Restatement) apply in actions sounding in tort that involve choice of law issues. *Accord, Werner v. Werner,* 84 Wn.2d 360, 526 P.2d 370 (1974).

*Johnson* established a 2–step analysis applicable to such cases. The first step involves an evaluation of the contacts with each interested jurisdiction. *See* Restatement § 145. These contacts are to be evaluated according to their relative importance with respect to the particular issue. The approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found. *Johnson,* at 581. The second step involves an evaluation of the interests and public policies of potentially concerned jurisdictions. The extent of the interest of each potentially interested state should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved. *Johnson,* at 582.

While *Johnson* makes the analytical framework clear, the ultimate outcome, in any given case, depends upon the underlying facts of that case. While a number of different approaches have developed in the choice of law debate "each necessarily depends upon a *subjective analysis of objective factors*". A "modern rule" imposes a duty on the forum court "to undertake an analytical approach to the *facts* presented in a multi–state tort action to determine what law should govern the substantive rights of the parties." (Italics ours.) Annot., 29 A.L.R.3d 603, 622–23 (1970).

> All that can presently be done in these areas is to state a general principle, such as application of the local law "of the state of most significant relationship", which provides some clue to the correct approach but does not furnish precise answers. In these areas, the courts must look in *each case to the underlying factors themselves* in order

to arrive at a decision which will best accommodate them.

(Italics ours.) Restatement (Second) of Conflict of Laws § 6, comment *c* (1971).

In this case, the parties have not presented this court with a record that is sufficiently developed to enable us to undertake the factual analysis necessary for proper resolution of the conflicts issue involved. The trial court considered 19 separate documents and heard oral argument before denying respondents' motion to strike, and ordering British Columbia law to govern the issue of damages. This record contains 8 of those 19 documents[4] and no report of proceedings. Out of those 8 documents, only the respondents' complaint, petitioners' answer/third party complaint and the petitioners' answers to the respondents' interrogatories can be used by this court as a basis for establishing the facts in this case for purposes of a pretrial determination.

Examples of facts that are potentially relevant to our analysis, but on this record are either undisclosed or merely allegations are: industry standards or regulations, if any, concerning selection and loading of trucks for hauling freight; the status of the third party defendants,[5] who actually loaded the truck in British Columbia;[6] the possible existence of applicable laws or regulations of British

---

[4]Those 8 documents are: the complaint; defendants' amended answer and third party complaint; response to request for production; plaintiffs' interrogatories and answers of defendant Noble and defendant Widing Transportation, Inc.; third party defendant Madill's answer to third party complaint; defendants' memorandum in opposition to motion for summary judgment; and defendants' reply to plaintiffs' supplemental brief.

[5]Southwell alleges that the Washington corporation controls the British Columbia corporation and, therefore, both should be treated as a Washington corporation. Widing and Noble allege the exact opposite.

[6]This fact is particularly relevant, because the party that actually loaded the truck may ultimately be the responsible party. Southwell alleged Noble loaded the truck, while Widing and Noble allege that S. Madill, Ltd., loaded the truck.

Columbia applying to loading or hauling cargo;[7] any action taken by British Columbia authorities in relation to this incident,[8] and, if any was taken, the outcome of that action. While not an exhaustive list, all these factors are examples of relevant factors to be considered in evaluating the significance of the contacts with each jurisdiction, as well as evaluating the interests of both jurisdictions in applying their respective local law rule.

In *Johnson,* as opposed to this case, the case came before us only after summary judgment by the trial court on the conflicts issue. In *Johnson,* we had a full record meticulously prepared by the parties. The complaint in that case alleged in detail the facts and what acts by the defendants constituted negligence, for which they were liable. More importantly, the record contained a stipulation of facts entered into by the parties specifically for the purpose of appeal. That stipulation of facts covered every detail of the case except for an admission of negligent conduct. Additionally, the record contained all of the information that was before the trial court at the time the court entered its summary judgment.

In contrast, all we have before us in this case are the conclusory allegations of respondent, Southwell, and the equally conclusory allegation of the petitioner, Widing, which taken together amount to a claim that someone's negligence caused the death of the decedent. An unsubstantiated claim by a plaintiff that a Washington defendant is negligent, and that negligence caused injury, does not

---

[7]This is highly relevant because the death and accident occurred on a highway within the borders of the Province of British Columbia, Canada.

[8]Counsel for Widing argues, in both his brief and in oral argument, that British Columbia authorities conducted a hearing regarding this accidental death, and acquitted respondent Noble of failing to properly secure his load. Noble is the only Washington resident joined by Southwell. If the action in British Columbia absolved Noble of responsibility, then the interest of Washington would be weakened because Widing, an Oregon corporation doing business in Washington, would be the only party as to which Washington could have an interest. *Cf. Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 555 P.2d 997 (1976).

provide a sufficient factual basis for this court to evaluate the significance of all the contacts with concerned jurisdictions. Nor does it provide a basis for evaluating the strength of those jurisdiction interests embodied in their respective conflicting laws. If we were to decide this case on this record, and find Washington law should govern the issue of damages, we would essentially be adopting a rule of lex fori. *See* Ehrenzweig, *The Lex Fori—Basic Rule in the Conflict of Laws,* 58 Mich. L. Rev. 637 (1960).

We are not hesitant to decide a conflicts case on a record that is not based on a full trial; however, we are hesitant to decide a conflicts case on a record in which the facts before us may develop in a number of ways at trial, reducing our opinion to nothing more than an advisory opinion.

Therefore, we remand this case to the trial court with instructions to limit its pretrial order to a denial of a motion to strike. This will allow the parties to go forward with the action and develop the record while preserving the conflicts issue for resolution in light of a sufficiently developed record. We note that the only rule of law argued before this court as involving a conflict, is the decedent's right to recover for future earnings.[9] Presumably then, this action can go forward, applying Washington law, and the conflict problem would not arise until the case goes to the jury. The trial court and the parties can formulate appropriate measures, such as special jury verdict forms for damages, to avoid the necessity of retrial if the issue is destined for appellate review. In conclusion, we wish to make clear that we express no opinion concerning the propriety of the original order of the trial court. We only express the view, that on the record provided by the parties, we cannot

---

[9]No other issue of law was briefed or argued as involving a potential conflict between British Columbia and Washington law. We note, however, without deciding the issue, that the parents' right to recovery in their individual capacity may also be different under British Columbia law and Washington law. *Compare* RCW 4.24.010 *and Hinzman v. Palmanteer,* 81 Wn.2d 327, 501 P.2d 1228 (1972) *with* B.C. Rev. Stat. ch. 120 (1979) *and Schwab v. Schaloske,* 37 B.C.L.R. 111 (1982); *Jeselon v. Waters,* 27 B.C.L.R. 191 (1981); *Gorrill v. Ross,* 22 B.C.L.R. 140 (1980).

make the factual analysis necessary to affirm or reverse the trial court.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, DIMMICK, and PEARSON, JJ., concur.

DORE, J. (dissenting)—The majority holds that there is an insufficient factual basis to make a choice of law determination. I disagree, and would affirm the Court of Appeals determination that Washington law governs.

This court in *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 555 P.2d 997 (1976) rejected the rule of lex loci delicti and adopted instead the most significant relationship rule embodied in sections 6 and 145 of the Restatement (Second) of Conflict of Laws (1971). In *Johnson*, a Kansas resident was killed in Kansas when he fell from a scaffold designed, manufactured and shipped to Kansas by a Washington corporation. The decedent's wife, also a Kansas resident, brought a wrongful death action in Washington against the Washington corporation alleging defective design. *Johnson*, at 578. Kansas law placed a $50,000 damage limitation on wrongful death actions while Washington law allowed unlimited damage recovery. The issue before this court was which law applied; Kansas' which limited damages, or Washington's which had no limit on recoverable damage.

The *Johnson* court stated that the most significant relationship approach is not to count contacts but rather to consider those contacts which are most significant and determine where those contacts are found. In conjunction with the significant contacts approach, the court stated that in arriving at a choice of law decision the court must also evaluate the interest and policies of potentially concerned states as reflected in the conflicting laws at issue.

Relying on *Hurtado v. Superior Court,* 11 Cal. 3d 574, 522 P.2d 666, 114 Cal. Rptr. 106 (1974), the *Johnson* court found that Kansas interest in limiting wrongful death damages was to protect defendants from excessive financial

burdens. Kansas also sought to eliminate speculative claims and difficult computation issues. Its interest, however, was primarily local as the protection against excessive financial burdens was designed to protect its own residents. *Johnson,* at 582–83. The court found that the Washington policy of full recovery was deterrent in nature as it more effectively penalizes the culpable defendant and deters it and others similarly situated from negligent conduct. Its primary purpose was also local, seeking to deter negligent conduct within its borders. It concluded that Kansas had no interest in applying its limitation to a nonresident defendant sued in Washington while Washington had a legitimate interest in applying its law. Therefore, although the contacts with each state were equal, Washington law would apply because it was the only state whose interest would be furthered by application of the particular law. *Johnson,* at 583–84.

Therefore, following *Johnson* in arriving at a choice of law decision, the court must first evaluate the contacts with each jurisdiction and the significance of each of those contacts. Then the court must analyze the public policy interest embodied in the conflicting laws at issue and determine which state, if any, has a greater interest in having its law applied. *Accord, Barr v. Interbay Citizens Bank,* 96 Wn.2d 692, 649 P.2d 827 (1981); *Kammerer v. Western Gear Corp.,* 96 Wn.2d 416, 635 P.2d 708 (1981); *Mentry v. Smith,* 18 Wn. App. 668, 571 P.2d 589 (1977).

The issue in the present case involves only the conflicting damage laws—specifically whether British Columbia law, which limits damages in wrongful death recovery, or Washington law, which doesn't limit damages, should apply.

I find this case indistinguishable from *Johnson.* As in *Johnson,* the issue in this case involves a wrongful death damage limitation of a foreign jurisdiction that conflicts with Washington's policy of unlimited recovery. The plaintiffs are residents of the foreign jurisdiction and the wrongful death occurred in that foreign jurisdiction. As in *Johnson,* the defendants are Washington residents and the negligent conduct that proximately caused the wrongful

death occurred in Washington. As in *Johnson,* the contacts with each jurisdiction are of equal weight. The Court of Appeals listed the significant contacts as follows:

### Washington

1. The truck driver, Noble, is a resident of and domiciled in Everett, Washington.

2. Widing is a corporation doing business in Washington with a principal place of business in Kent, Washington.

3. The trip undertaken by Noble began and ended within the State of Washington.

4. The truck was selected in Washington (the plaintiffs contend that the selection of a flatbed truck with no sides and inadequately low tail gate for carrying the load of disk–shaped castings constitutes negligence).

5. Third party defendant S. Madill, Inc. is a Washington corporation.

### British Columbia

1. Plaintiffs are domiciled in and are residents of British Columbia, as was the decedent, Mark Southwell.

2. The truck was loaded in British Columbia.

3. The place of accident and death was in British Columbia.

3. Third party defendant S. Madill, Ltd. is a British Columbia corporation.

Southwell v. Widing Transportation, Inc., cause 11569–3–I (Dec. 20, 1982), at 5–6.

In evaluating the interests of the relevant jurisdictions, they are identical with the policies expressed in *Johnson.* British Columbia limits damages to protect local resident defendants from excessive financial burdens and eliminate speculative claims and difficult computation issues. Washington's interest in allowing full recovery is to deter negligent conduct occurring within its borders. *Johnson,* at 581–83. Like the state of Kansas in *Johnson,* British Columbia would have no interest in applying its damage limitation to a nonresident defendant while application of Washington's unlimited recovery rule would advance Washington's policy of deterrence. Therefore, the Court of Appeals was correct in directing the trial court to apply the law of Washington.

A differing aspect in the instant action from the facts of *Johnson* is the existence of the third party complaint against S. Madill, Ltd., seeking indemnification or contribution. The third party complaint alleges that the employees of S. Madill, Ltd., a British Columbia corporation, negligently loaded and secured the steel castings in British Columbia and that their negligence was the proximate cause of Southwell's death. The Court of Appeals explicitly held it was not considering the fact that the third party defendant was a British Columbia resident because the issue of damages was only between plaintiff Southwell and defendants Widing and Noble. As between the third party plaintiff Noble and Widing and the third party defendant (Madill), the only issue will be the comparative fault of the joint tortfeasors and contribution. Southwell v. Widing Transportation, Inc., cause 11569–3–I (Dec. 20, 1982), at 6 n.2. I agree.

In *Schulhof v. Northeast Cellulose, Inc.*, 545 F. Supp. 1200 (D. Mass. 1982), the court applied the principles in the Restatement (Second) of Conflict of Laws (1971) in deciding choice of law issues concerning damages for wrongful death and contribution among joint tortfeasors. The court held that the wrongful death act of Massachusetts would govern with respect to issues of compensatory as well as punitive damages despite the fact that as between codefendants, a New Hampshire defendant would possibly be liable for contribution or indemnity. The court further held that New Hampshire law would govern the issue of indemnity or contribution since the relationship between the defendants apparently existed there.

In the present action, the choice of law issue involves only the proper measure of damages in the wrongful death action initiated by Southwell against Widing and Noble for acts allegedly committed in Washington. In accordance with *Johnson*, the law of Washington should apply. The question of choice of law governing any indemnity or contribution issues is not before this court and is not resolved.

Accordingly, I would affirm the Court of Appeals.

DOLLIVER, J., concurs with DORE, J.