Charlotte **CHAMBERS** and Glenn Norman Chambers, Plaintiffs and Appellants,

v.

**DAKOTAH CHARTER, INC.,** a South Dakota corporation, Defendant and Appellee.

Nos. 17400, 17404.

Supreme Court of South Dakota.

Argued Sept. 10, 1991.

Decided June 3, 1992.

Jon C. Sogn of Lynn, Jackson, Shultz & Lebrun, Sioux Falls, for plaintiffs and appellants.

John E. Simko and Mark Mickelson, Legal Intern of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee.

ZINTER, Circuit Judge.

Plaintiffs, Charlotte and Glenn Chambers (Charlotte or Chambers), appeal from a jury verdict in favor of Defendant, Dakotah Charter, Inc. (Dakotah Charter). The questions presented on appeal are (1), whether South Dakota courts should continue to follow the choice of laws rule of lex loci delecti (law of the place of the

wrong) in multi-state tort actions and (2), whether the trial court should have applied the Missouri law of comparative negligence in an action between South Dakota domiciliaries arising from an accident on a bus in Missouri. The trial court declined to follow lex loci delecti, and it applied the South Dakota law of comparative negligence. We affirm.

In May 1989, Charlotte and thirty-four other South Dakota residents chartered a bus in Sioux Falls from Dakotah Charter, a South Dakota corporation. The purpose of the trip was to attend a Tae Kwon Do tournament in Arkansas. While en route from South Dakota to Arkansas, the bus stopped on three occasions for the convenience of the passengers and refueling. The first and second stops, in Omaha, Nebraska and St. Joseph, Missouri, occurred without incident. On the third stop, in Nevada City, Missouri, Charlotte fell on the steps in the bus and severely fractured her ankle.

Chambers commenced actions for personal injury and loss of consortium. Chambers contended that Dakotah Charter negligently failed to maintain the interior of the bus in a safe condition. Charlotte specifically contended that she fell on a discarded piece of candy that was distributed to children by Dakotah Charter's bus driver during the first leg of the trip. Dakotah Charter denied Chambers' allegations and also contended that Charlotte was contributorily negligent.

Although the contributory negligence of a plaintiff no longer constitutes an absolute bar to recovery in either South Dakota or Missouri, each state's comparative negligence law is slightly different. Missouri is a pure comparative negligence state. *Gustafson v. Benda*, 661 S.W.2d 11 (Mo.1983). Under Missouri law, if a plaintiff is determined to be contributorily negligent in any degree, the plaintiff may still recover, but the plaintiff's damages are reduced by the

percentage of fault that is attributed to the plaintiff's conduct. *Id.* Under South Dakota law, a contributorily negligent plaintiff's damages are also reduced in proportion to the amount of the plaintiff's contributory negligence. A contributorily negligent plaintiff may not, however, recover anything in South Dakota if the plaintiff's negligence is more than slight in comparison with the negligence of the defendant. SDCL 20-9-2.[1]

Based upon the three special concurrences in *Owen v. Owen*, 444 N.W.2d 710 (S.D. 1989), the trial court declined to follow the traditional rule of lex loci delicti and apply the Missouri law of comparative negligence. Instead, the trial court instructed the jury under South Dakota's comparative negligence statute. Chambers argue that, under lex loci delicti or the modern approaches discussed in *Owen*, the trial court should have given Chambers' proposed instruction which incorporated Missouri law. We disagree.

█ Our standard of review of the trial court's instructions is well established. An appellant has the burden to show not only that the instruction given was in error, but also that it was prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if the appellant's instructions had been given. *Lytle v. Morgan*, 270 N.W.2d 359, 362 (S.D.1978).

## CHOICE OF LAWS APPROACH

Until 1989 this Court has followed an unqualified rule of lex loci delicti to govern the choice of laws in multi-state tort actions. *See Owen*, 444 N.W.2d 710; *Heidemann v. Rohl*, 86 S.D. 250, 194 N.W.2d 164 (1972). Although we did not formally abandon lex loci delicti in *Owen*, the "majority" opinion, written by Morgan, J. and concurred in by Wuest, C.J., took the first step in that direction when it adopted a

---

1. SDCL 20-9-2 provides:
   In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

public policy exception to the rule "to avoid applications that are repugnant to the public policy of our state." *Owen*, 444 N.W.2d at 713. Although the three remaining members of this Court concurred in the *Owen* result, they voted by special concurrence to "[j]oin the vast majority of jurisdictions which [have] abolish[ed] the archaic and rigid rule of lex loci in favor of an approach which gives flexibility and addresses conflicts of laws issues in a responsible and equitable manner." *Id.* at 714–715 (Miller, J., concurring specially, joined by Henderson and Sabers, JJ.). Although the reasons for abandonment of the rule were well articulated by present Chief Justice Miller in *Owen*, 444 N.W.2d at 715, our adoption of lex loci delecti in *Heidemann* and stare decisis warrant a further limited discussion of reasons for abandonment of the traditional rule.

Lex loci delecti is a judge made rule of law that is based on the doctrine of vested rights. In *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 746, 191 N.E.2d 279, 281 (1963), the case that led many courts to abandon lex loci delecti, the New York Court of Appeals explained that:

The traditional choice of law rule, embodied in the original Restatement of Conflict of Laws (§ 384), and until recently unquestioningly followed in this court ..., has been that the substantive rights and liabilities arising out of a tortious occurrence are determinable by the law of the place of the tort.... It had its conceptual foundation in the vested rights doctrine, namely, that a right to recover for a foreign tort owes its creation to the law of the jurisdiction where the injury occurred and depends for its existence and extent solely on such law.... Although espoused by such

great figures as Justice HOLMES ... and Professor Beale ... the vested rights doctrine has long since been discredited because it fails to take account of underlying policy considerations in evaluating the significance to be ascribed to the circumstance that an act had a foreign situs in determining the rights and liabilities which arise out of that act. 'The vice of the vested rights theory', it has been aptly stated, 'is that it affects to decide concrete cases upon generalities which do not state the practical considerations involved'.... More particularly, as applied to torts, the theory ignores the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues. It is for this very reason that, despite the advantages of certainty, ease of application and predictability which it affords ..., there has in recent years been increasing criticism of the traditional rule by commentators and a judicial trend towards its abandonment or modification. (citations omitted).

Twenty years ago we adopted lex loci delecti in *Heidemann*, 194 N.W.2d at 169. At that time we noted that lex loci delecti was the prevailing rule. *Id.* at 167. Although *Babcock* had been decided at that time, we declined to adopt a modern approach until a satisfactory substitute was developed because we noted "considerable confusion and inconsistency" in the application of modern rules. *Id.* at 169. We observed, however, that the condition was perhaps characteristic of any transitional period in a changing law era. *Id.*

■ The transition to a new approach has continued since *Heidemann*. Today only fifteen states still retain the traditional rule,[2] and the majority of states which

2. *See Powell v. Sappington*, 495 So.2d 569 (Ala. 1986); *Friday v. Smoot*, 58 Del. 488, 211 A.2d 594 (1965); *Sargent Indus., Inc. v. Delta Air Lines*, 251 Ga. 91, 303 S.E.2d 108 (1983); *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985); *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207 (1983); *Haker v. Southwestern Railway Co.*, 176 Mont. 364, 578 P.2d 724 (1978); *Tab Construction Co. v. Eighth Judicial District Court*, 83 Nev. 364, 432 P.2d 90 (1967); *Zamora v. Smalley*, 68 N.M. 45, 358 P.2d 362 (1961); *Shaw v. Lee*, 258 N.C. 609, 129 S.E.2d 288 (1963); *Algie v. Algie*, 261 S.C. 103, 198 S.E.2d 529 (1973); *Winters v. Maxey*, 481 S.W.2d 755 (Tenn.1972); *Goldman v. Beaudry*, 122 Vt. 299, 170 A.2d 636 (1961); *Frye v. Comm.W.*, 231 Va. 370, 345 S.E.2d 267 (1986); *Vest v. St. Albans Psychiatric Hospital, Inc.*, 182 W.Va. 228, 387 S.E.2d 282 (1989); *Duke v. Housen*, 589 P.2d 334 (Wyo.), *cert. denied*, 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979).

have chosen a new approach have adopted some version of the significant relationship approach. *See generally* Smith, *Choice of Law in the United States,* 38 Hastings L.J. 1041 (1987); Kay, *Theory into Practice: Choice of Law in the Courts,* 34 Mercer L.Rev. 521 (1983). Furthermore, courts have started to overcome the inconsistency we noted *Heidemann,* at least in cases such as this one which involves contributory/comparative negligence.[3] Because a discernible trend toward one modern approach has developed among states which have abandoned the traditional rule and because substantial precedent is developing under the modern approaches, we now join the clear majority and abandon lex loci delecti to govern choice of laws analysis in multi-state tort actions. *Heidemann* and other cases to the contrary are modified as hereinafter provided.

Having abolished lex loci delecti as South Dakota's choice of law rule, we turn to the adoption of an appropriate modern approach. The selection of the proper modern approach has been the subject of much discussion by scholars and courts. *See Owen,* 444 N.W.2d at 714 n. 2. Although three members of this Court expressed a preference in *Owen* for the "choice-influencing considerations" approach refined by Professor Robert A. Leflar,[4] we left the matter for further analysis. Subsequent analysis by others has provided thoughtful insight into the adoption of an appropriate modern approach. *See* Thatcher, *Choice of Law in Multi–State Tort Actions after Owen v. Owen: The Less Things Change ...,* 35 S.D.L.Rev. 372 (1989–1990).

No less than six approaches are in current use in one or more combinations.[5] This diversity has been caused in part by substantial disagreement among scholars about fundamental questions underlying each approach. Unfortunately, there is probably less consensus among the schol-

ars today than ever before. Kramer, *Rethinking Choice of* Law, 90 Colum.L.Rev. 277, 279 (1990). Nevertheless, of the modern approaches, the three most generally accepted by courts are: (1) the "most significant relationship" approach which arose out of *Babcock,* 240 N.Y.S.2d 743, 191 N.E.2d 279, and has evolved into the Restatement (Second) of Conflict of Laws (1971); (2) the "governmental interest" approach originated by Professor Brainerd Currie and adopted in *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); and, (3) the "choice-influencing considerations" approach refined by Professor Leflar.

The favoritism shown by courts for some form of the significant relationship approach appears to have occurred for general and specific reasons. Generally, the mere adoption of the Restatement (Second) has restricted development of the governmental interest and the choice-influencing consideration approaches. *Smith, supra,* at 1170. That trend has occurred because all but one of the modern considerations used in government interest and choice-influencing approaches are explicitly recognized in the Restatement (Second), and the omitted consideration, (the better law factor), can be considered under § 6 of the Restatement (Second). As a result, the government interest and choice-influencing consideration approaches have been relegated to a secondary role in conflicts jurisprudence. *Id.*

The government interest and the choice-influencing consideration approaches have also been the subject of specific criticism. The pure governmental interest approach has been criticized because it rejects all jurisdiction-selection rules for all purposes. Posnak, *Choice of Law—Rules vs. Analysis: A More Workable Marriage than the (Second) Restatement; A Very Well–Cur-*

---

3. *See* note 10, *infra.*

4. *See,* Leflar, *Choice–Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267 (1966); Leflar, *Conflicts Law: More on Choice–Influencing Considerations,* 54 Calif.L.Rev. 1584 (1966); R. Leflar, L. McDougal & R. Felix, *American Conflicts Law* 207 (4th ed. 1986).

5. For a survey of the choice of law theories currently in use in all jurisdictions *see Smith, Choice of Law in the United States,* 38 Hastings L.J. 1041 (1987); Kozyris & Symeonides, *Choice of Law in the American Courts in 1989: An Overview,* 38 Am.J.Comp.L. 601 (1990).

*ried Leflar Over Reese Approach,* 40 Mercer L.Rev. 869, 875 n. 37 (1989). It has also been criticized because its decidedly pro-forum preference has been rejected by most courts and commentators, including those committed to the approach. *Kay, supra,* at 551. Although the interest approach probably remains the dominant choice of law theory among academics, its hold is slipping among new scholars, *Kramer, supra,* at 278–279, and it has received little support from the courts.[6]

The choice-influencing-considerations approach has also received comparatively little recognition by courts.[7] This has occurred in part because, except for its "better law" factor, there is not much difference between this approach and the Restatement (Second). *Posnak, supra,* at 887 n. 96. Furthermore, the better law factor has been the subject of much criticism. E. Scoles & P. Hay, Conflict Of Laws § 2.11 (1984); Korn, *The Choice–of–Law Revolution: A Critique,* 83 Colum.L.Rev. 722, 958 (1983).

The Restatement (Second) is a compromise. It contains rules, which aid in certainty of application, as well as the generally recognized policy considerations which are to be considered with the rules. Although a principal criticism of the Restatement (Second) has been that it has not always led to consistent results, its authors believed that it was unwise to do more than adopt broad flexible rules, in the most significant relationship formulation, that would guide courts without impeding constructive progress. Reese, *Conflict of Laws and the Restatement Second,* 28 Law & Contemp. Probs. 679, 699, (1963); *Kay, supra,* at 553. Although this compromise has led to an approach which some have said is so general as to be useless, even those critics admit benefit will arise from the adoption of any rule that is also applied by other states. *Kramer, supra,* at 321–322.

■ Most states, which have abandoned lex loci delecti, now apply some form of the significant relationship approach.[8] Because the Restatement (Second) contains most of the generally accepted modern policy considerations and rules, because it has become the prevailing approach among courts and because the most precedent will develop under that approach, we now adopt the most significant relationship approach to govern multi-state tort conflicts.

### DETERMINATION OF THE APPROPRIATE COMPARATIVE NEGLIGENCE LAW

Under the most significant relationship approach:

*O'Connor v. O'Connor,* 201 Conn. 632, 519 A.2d 13 (1986); *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999 (Fla.1980); *Johnson v. Pischke,* 108 Idaho 397, 700 P.2d 19 (1985); *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970); *Hubbard Mfg. Co., Inc. v. Greeson,* 515 N.E.2d 1071 (Ind.1987); *Fuerste v. Bemis,* 156 N.W.2d 831 (Iowa 1968); *Adams v. Buffalo Forge Co.,* 443 A.2d 932 (Me.1982); *Cohen v. McDonnell Douglas Corp,* 389 Mass. 327, 450 N.E.2d 581 (1983); *Mitchell v. Craft,* 211 So.2d 509 (Miss.1968); *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo.1969); *Harper v. Silva,* 224 Neb. 645, 399 N.W.2d 826 (1987); *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); *Issendorf v. Olson,* 194 N.W.2d 750 (N.D.1972); *Morgan v. Biro Mfg. Co.,* 15 Ohio St.3d 339, 15 OBR 463, 474 N.E.2d 286 (1984); *Brickner v. Gooden,* 525 P.2d 632 (Okla.1974); *Erwin v. Thomas,* 264 Or. 454, 506 P.2d 494 (1973); *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979); *Forsman v. Forsman,* 779 P.2d 218 (Utah 1989); *Southwell v. Widing Transp., Inc.,* 101 Wash.2d 200, 676 P.2d 477 (1984).

---

**6.** The only courts which have adopted this approach are: *Nepera Chem., Inc. v. Sea–Land Service, Inc.,* 794 F.2d 688 (D.C.Cir.1986); *Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 550 S.W.2d 453 (1977); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); *Jagers v. Royal Indemnity Co.,* 276 So.2d 309 (La.1973); *Mellk v. Sarahson,* 49 N.J. 226, 229 A.2d 625 (1967); *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970).

**7.** The only courts which have adopted this approach are: *Peters v. Peters,* 63 Haw. 653, 634 P.2d 586 (1981); *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973); *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966); *Pardey v. Boulevard Billiard Club,* 518 A.2d 1349 (R.I.1986); *Heath v. Zellmer,* 35 Wis.2d 578, 151 N.W.2d 664 (1967).

**8.** *See Armstrong v. Armstrong,* 441 P.2d 699 (Alaska 1968); *Schwartz v. Schwartz,* 103 Ariz. 562, 447 P.2d 254 (1968); *First Nat'l Bank v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973);

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). The principles to be considered under § 6 are:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second), *supra,* § 6 (1971).

■ Here, the issue involves the application of rules of contributory and compara-

tive negligence. Those rules do not regulate or determine what is negligent conduct. They only regulate the amount of damages a contributorily negligent plaintiff may recover.

With respect to that issue, South Dakota has all of the important contacts. First, the principal conduct which allegedly caused the injury was the distribution of the candy in the bus on the first leg of the trip. Missouri had no contact with that conduct. Even if Missouri could claim some limited contact with Dakota Charter's alleged failure to maintain a safe premises after the candy was distributed, Missouri's contact was relatively unimportant to the issue of comparative negligence because comparative negligence law is not a rule of the road nor does it regulate the conduct of bus companies using Missouri's highways. Second, South Dakota was the domicile, residence, place of incorporation and place of business of the parties, as well as the place where the relationship of the parties was centered. These contacts are important to the issue of comparative negligence because the economic impact of the law applied will be felt where the parties reside. Finally, although the injury did occur in Missouri, it occurred in the bus while on an interstate journey from South Dakota to Arkansas. It was merely fortuitous that Charlotte slipped while the bus was passing through Missouri.

Considering these contacts, the two factors relevant to a choice of the appropriate comparative negligence law favor the application of South Dakota law. These two factors are the policies of the interested states and the relative interests of the states in determining the issue.

This state's policy has been clearly expressed by the legislature in our comparative negligence statute. Although Missouri also has a comparative negligence policy, South Dakota has the only significant interest in a determination of the comparative negligence issue because all of the contacts are in South Dakota, and Missouri's policy would not be furthered by its application to South Dakota domiciliaries who have no

important contact with Missouri.[9] Where the forum's interests are the "most deeply affected" under these factors, it is generally fitting that forum's law should be applied. *Restatement, supra,* § 6 comment (f) (1971).

The remaining factors have little importance in this negligence action. First, neither Missouri nor South Dakota's laws significantly affect the needs of interstate systems because neither interstate relations nor automobile movement would be influenced by either law. Second, the protection of justified expectancy, although important in consensual relationships, has no importance in this negligence action. Generally, people do not consider the legal consequences of their conduct or how law may be applied prior to becoming involved in an accident. Third, the policy of ameliorating the harsh consequences of common law contributory negligence rules is furthered by both states' comparative negligence laws. Although Chambers argue that Missouri's policy is better, that contention is debatable. Furthermore, even if Missouri's policy could be considered "better," conflicts analysis should not be used to apply the law of a state that has no interest in having its rule applied. The proper solution in such cases is to change the forum's inferior law. *Fuerste v. Bemis,* 156 N.W.2d 831, 834 (Iowa 1968). Finally, little significance can be attached to the ease of determining and applying comparative negligence law or to the certainty, predictability and uniformity of result. Both states' laws are easy to determine and apply. Furthermore, because the differences in the law are so minor, there will be few differences in result.

■ Considering the issue and each state's contacts, South Dakota has the most significant relationship to the occurrence and the parties. This Court holds that the forum's comparative negligence law should be applied to a forum's domiciliaries who are involved in an accident in another state. Other courts have reached the same conclusion under each of the modern approaches.[10] We affirm the trial court's application of South Dakota law and need not reach the issue raised by Dakotah Charter's notice of review.

ZINTER, Circuit Judge, for AMUNDSON, J., disqualified.

**9.** It is acknowledged that considering these factors, many scholars and some courts have categorized this type of case as a "false conflict" which presents no conflict of law and which should be decided under the law of the state which has the specific interest without regard to any presumptive conflict rule or approach. *See, e.g.,* B. Currie, *Selected Essays on the Conflict of Laws* 107 (1963); *Posnak, supra* at 873. Nevertheless, we apply the significant relationship approach to clarify the current ambiguity in this jurisdiction concerning the proper choice of law approach to apply in multi-state tort cases.

**10.** *See Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 550 S.W.2d 453 (1977) (Governmental interest approach—Arkansas' comparative negligence law which apportions liability *as long as plaintiff's fault is less than defendant's* applies to an Arkansas resident's injury sustained in an auto accident in Missouri while Missouri's rules of the road apply to questions of negligence in driving the vehicle); *Sabell v. Pacific Intermountain Express Co.,* 36 Colo.App. 60, 536 P.2d 1160 (1975) (Most significant relationships approach—Colorado's comparative negligence law applies to a motor vehicle accident that occurred in Iowa as the issue relates to the recovery of damages); *Brown v. DSI Transports, Inc.,* 496 So.2d 478 (La.Ct.App.1986) (Most significant relationship approach—Louisiana law of comparative negligence applies to a Louisiana plaintiff injured in auto accident in Alabama); *Mitchell v. Craft,* 211 So.2d 509 (Miss.1968) (Choice-influencing-considerations approach—Mississippi comparative negligence law applies to Mississippi residents injured in auto accident in Louisiana); *Fells v. Bowman,* 274 So.2d 109 (Miss. 1973) (Most significant relationship or choice-influencing consideration approach—Mississippi comparative negligence law applies to damages recoverable by a Mississippi resident's auto accident in Louisiana while rules of the road of the tort state apply to determine negligence); *DeRemer v. Pacific Intermountain Express Co.,* 353 N.W.2d 694 (Minn.Ct.App.1984) (Choice-influencing considerations approach—Minnesota comparative negligence law applies to Minnesota resident injured in auto accident in South Dakota); *Schwartz v. Consolidated Freightways Corp. of Dela.,* 300 Minn. 487, 221 N.W.2d 665 (1974) (Choice-influencing considerations—Minnesota comparative negligence law applies to Minnesota resident injured in Indiana by defendant licensed to do business in Minnesota); *Isssendorf v. Olson,* 194 N.W.2d 750 (N.D. 1972) (Dominant contacts approach—North Dakota law of contributory negligence applies to North Dakota resident injured in auto accident in Minnesota).

WUEST, HENDERSON and SABERS, JJ., concur.

MILLER, C.J., concurs specially.

MILLER, Chief Justice (concurring specially).

I am in full accord with and concur in the majority opinion.

At the time of my special writing in *Owen,* I was persuaded that the "choice-influencing considerations" approach was preferable. Since that time, with the opportunity to give it further study and consideration, I am now convinced that "the most significant relationship" approach is the most appropriate for South Dakota. I would be less than candid if I did not note that Professor Thatcher's fine law review article (35 S.D.L.Rev. 372) played a large part in stimulating my re-evaluation on this topic.

Konrad Adenauer was once quoted as saying, "I reserve the right to be smarter today than I was yesterday." So do I!