[No. 15712-8-II.    Division Two.    November 23, 1994.]

MICHELLE CHAPPELL WILLIAMS, *Individually, as
Personal Representative, and as Guardian ad Litem,
Appellant*, v. THE STATE OF WASHINGTON, ET AL,
*Respondents.*

238

*Roblin John Williamson* and *Davies, Roberts & Reid ( Leo Probst,* of counsel), for appellant.

*Hugh James Potter* and *Blair, Schaefer, Hutchison & Wolfe; Theodore Kulongoski, Attorney General for the State of Oregon,* and *Michael Reynolds, Assistant,* for respondents.

HOUGHTON, J. — Michelle Chappell Williams, individually, as personal representative of the estate of Kenneth Wayne Chappell, and as guardian ad litem of Amber and Kari Chappell, minors (collectively, Williams) appeals from an order on summary judgment dismissing her wrongful death and survival actions. The trial court determined that Oregon law should be applied, that Oregon law bars Williams's action, and, that, in the interest of comity, jurisdiction over Oregon

should be declined. We affirm the trial court, but based upon different reasoning.

This case arises out of a fatal accident on September 7, 1985, involving Kenneth Wayne Chappell (Chappell), an Oregon resident who owned and operated an independent trucking business based in Oregon. Chappell was under contract with a Washington company to haul a load from Seattle to Vancouver, Washington. After unloading his truck in Vancouver, Chappell headed south on Interstate 5 (I-5). He was killed when his truck collided with the superstructure on the Washington side of the I-5 bridge, which spans the Columbia River between Vancouver and Portland.

The I-5 bridge originally consisted of a single span carrying north and southbound traffic. In 1955, Oregon and Washington entered an agreement to construct a second span. The second span, where Chappell's accident occurred, carries southbound traffic. The original span was converted to carry northbound traffic.

Under their agreement, Washington and Oregon shared certain responsibilities for the bridge. Oregon was responsible for design of the bridge (subject to Washington's approval); for letting the construction contract; for supervision of the construction; and for maintenance of the bridge and toll plaza while the bridge was operated as a toll bridge. Oregon was also responsible for construction of the southern approach to the bridge, while Washington was responsible for design and construction of the northern approach to the bridge.

The responsibilities of Washington and Oregon changed over time. On October 25, 1966, the States entered into the "Maintenance Agreement Vancouver-Portland Interstate Bridge", under which Oregon assumed responsibility for repair and maintenance of the bridge, with the cost to be borne equally by both States. However, Washington was responsible for maintaining the northern approach to the bridge, while Oregon was responsible for maintaining the southern approach to the bridge. Oregon was required to submit detailed plans for Washington's approval regarding

any "improvements or betterments" of the bridge and estimates of costs before spending money on such improvements.

On May 31, 1988, Chappell's spouse, Michelle Chappell Williams, filed wrongful death and survival actions individually, as personal representative of the estate, and as guardian of two minor children against the States of Washington and Oregon, in Washington's Clark County Superior Court. The suit alleged, *inter alia*, that Chappell's death was proximately caused by Washington's and Oregon's failure to properly maintain the roadbed of the bridge and failure to provide adequate guardrails on the bridge.

The State of Oregon moved for summary judgment of dismissal of Williams's claims on two distinct grounds. First, Oregon contended that the Washington court should decline to accept jurisdiction over Oregon in the interest of interstate comity. Second, Oregon contended that its law should apply to the claims against Oregon. Under its law, Oregon argued, the complaint should be dismissed as untimely because it was not filed within the 2-year statute of limitation for commencement of an Oregon wrongful death action; alternatively, the complaint should be dismissed because Plaintiffs failed to comply with the tort claim requirement that notice be given to the State within 1 year after alleged loss or injury. The trial court granted Oregon's motion on both grounds. Williams appeals.

## ANALYSIS

### A

### Choice of Law

Here, Williams first contends the trial court erred in determining that Oregon law should apply based upon a choice of law analysis. Williams argues that Washington law applies because Washington had the most significant relationship to the occurrence.

The first step in our analysis of choice of law is to determine whether there is an actual conflict of laws. An

actual conflict between the law of Washington and the law of another state must be shown to exist before Washington courts will engage in a conflict of laws analysis. *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 875 P.2d 1213 (1994); *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 103, 864 P.2d 937 (1994); *International Tracers of Am. v. Estate of Hard*, 89 Wn.2d 140, 144, 570 P.2d 131 (1977), *appeal dismissed*, 435 U.S. 1004 (1978).

Oregon requires wrongful death actions against the State to be commenced within 2 years. Or. Rev. Stat. § 30.275(8) (1993). Oregon requires notice to the State of wrongful death actions within 1 year after the occurrence. Or. Rev. Stat. § 30.275(5)(a) (1993). By contrast, Washington's statute of limitation on wrongful death claims is 3 years, during which notice could be given at any time under former RCW 4.92.110 (Laws of 1979, ch. 151, § 4). *See Andrews v. State*, 65 Wn. App. 734, 736 & n.2, 829 P.2d 250 (1992); RCW 4.92.050; RCW 4.16.080(2); *Bader v. State*, 43 Wn. App. 223, 716 P.2d 925 (1986). Williams's notices of claims were filed with both States after 2 years, but before 3 years had expired; as a result, the claims are barred under Oregon law, but not under Washington law. Accordingly, there is an actual conflict between the laws of Washington and Oregon in this case.

In determining choice of law, Washington applies the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws (Restatement of Conflicts) § 145 (1971). *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580, 555 P.2d 997 (1976); *Bush v. O'Connor*, 58 Wn. App. 138, 143, 791 P.2d 915, *review denied*, 115 Wn.2d 1020 (1990). Under this test, choice of law depends upon which of two or more jurisdictions has the "most significant relationship" to a specific issue. *Burnside*, 123 Wn.2d at 100 (quoting *Johnson*, at 580). Therefore, each State's interests must be analyzed in relation to each issue presented.

To determine which State's law governs, several general principles apply to a tort choice-of-law problem:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place where the injury occurred,

    (b) the place where the conduct causing the injury occurred,

    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

    (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement of Conflicts § 145; *Johnson*, 87 Wn.2d at 580-81. More specifically, in wrongful death actions,

the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement of Conflicts § 175; *see also* § 175 cmt. a, at 523 (§ 146 applies the same principles in personal injury actions).

Sections 145, 146, and 175 refer to the "principles stated in § 6". Those principles are:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in the determination and application of the law to be applied.

Restatement of Conflicts § 6. A comment to section 146 further notes:

Whether there is such another state should be determined in the light of the choice-of-law principles stated in § 6. In large part, the answer to this question will depend upon whether some other state has a greater interest in the determination of the particular issue than the state where the injury occurred. *The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved . . ..*

87 Wn.2d at 582 (quoting Restatement of Conflicts § 146 cmt. c, at 430). These rules are applicable both to survival actions (*see* Restatement of Conflicts § 167), and also to damages in wrongful death or survival actions (*see* Restatement of Conflicts § 176 (damages follow § 175 determination)).

In sum, the court applies a 2-part analysis regarding each issue presented. First, we examine which state has the most significant contacts in light of the principles stated in Restatement of Conflicts § 145. Second, we examine which state has the most significant interest in applying its law on a particular issue in light of the principles stated in Restatement of Conflicts § 6. Each issue is examined separately. *See Johnson*, 87 Wn.2d at 580-84 (applying 2-part analysis); *Southwell v. Widing Transp., Inc.*, 101 Wn.2d 200, 204, 676 P.2d 477 (1984) (recognizing and applying 2-part analysis).

## 1. Analysis of Contacts

In determining which state has the most significant contacts, the court does not simply count contacts; rather, it must "consider which contacts are most significant and . . . determine where these contacts are found." *Johnson*, 87 Wn.2d at 581. As Restatement of Conflicts § 145 makes clear, we examine each state's relationship to (1) the occurrence, and (2) the parties. In the present case, these contacts may be briefly summarized as follows:

| WASHINGTON | OREGON |
|---|---|
| 1. Washington is a Defendant. | 1. Oregon is also a Defendant. |
| 2. Washington is the forum state. | 2. Williams is a resident of Oregon, as was Chappell. |

3. Decedent operated his business in Washington, under contract to a Washington corporation.

3. Decedent's business was owned and also operated in Oregon.

4. Decedent was leaving Washington after hauling a load from Seattle to Vancouver.

4. Decedent was heading home to Oregon.

5. The accident occurred on the Washington side of the bridge; Washington designed, and is responsible for maintenance of, the northern approach to approach to the bridge.

5. Oregon was also responsible for bridge design; supervised construction of the bridge; and is responsible for maintenance of the bridge and the southern southern approach.

While these contacts present a very close question, we conclude that Washington has the most significant relationship to the occurrence. The accident occurred in Washington, apparently at least partially upon a portion of the bridge that Washington designed, and on which Washington was responsible for maintenance. While Oregon too had responsibility for design and maintenance, the allegedly negligent design, construction, and maintenance at issue here occurred largely in Washington.

On the other hand, Oregon has the most significant relationship to the parties regarding this issue: both Chappell and Williams are Oregon residents, and Oregon itself is a Defendant. Washington, aside from its position as a codefendant, also had a significant relationship with Chappell, who operated his business, at least in this instance, wholly within Washington. Nonetheless, Oregon's relationship to the parties is somewhat more significant than Washington's.

As a result, Washington's and Oregon's contacts are nearly equal. As one court has noted, however, the general rule in conflicts cases "is that duplicate prizes are not awarded in case of ties". *Hardly Able Coal Co. v. International Harvester Co.*, 494 F. Supp. 249, 250 (N.D. Ill. 1980) (applying different choice-of-laws rule with similar effect). Indeed, § 145 of the Restatement of Conflicts makes clear that forum law applies in such cases. *Hardly Able*, at 250.

## 2. Analysis of Statute of Limitations and Nonclaim Issues

Having determined the contacts are nearly equal, although slightly more significant for Washington, we must next evaluate the interests and policies of Oregon and Washington in light of the purposes of statutes of limitation on one hand, and nonclaim statutes on the other. *See Southwell*, 101 Wn.2d at 204; *Johnson*, 87 Wn.2d at 582. After analyzing the interests of Washington, Oregon, and Williams in light of the differing policies underlying statutes of limitation and nonclaim statutes, we conclude that Washington's interest is greater regarding the statute of limitation issue, while Oregon's interest is greater regarding its nonclaim statute.

As the Washington Supreme Court has recently noted, the specific issue of "limitation periods [is] not subject to conflict of laws methodology" since Washington adopted the Uniform Conflict of Laws — Limitation Act (UCLLA) in 1983, codified as RCW 4.18.020.[1] *Rice*, 124 Wn.2d at 210. Rather, UCLLA's "borrowing statute" requires the court first to determine which state's substantive law applies under Washington's choice-of-law rules, and then to apply the statute of limitation of the "state whose law governs other substantive issues inherent in the claim." *Rice*, 124 Wn.2d at 211 (quoting Unif. Conflict of Laws-Limitations Act § 2 cmt., 12 U.L.A. 63 (Supp. 1994)); RCW 4.18.020(1)(b).

In *Johnson*, the Washington Supreme Court addressed whether Kansas's limitation on damages in wrongful death

---

[1]RCW 4.18.020 provides:

"(1) Except as provided by RCW 4.18.040 [not relevant here], if a claim is substantively based:

"(a) Upon the law of one other state, the limitation period of that state applies; or

"(b) Upon the law of more than one state, the limitation period of one of those states, chosen by the law of conflict of laws of this state, applies.

"(2) The limitation period of this state applies to all other claims."

actions should be applied by a Washington court hearing a Kansas resident's wrongful death claim arising out of the collapse of scaffolding alleged to have been negligently manufactured by a Washington corporation. 87 Wn.2d at 580. The court concluded that Kansas had no interest in applying its statute limiting its resident's damages against a Washington corporation, while Washington had a great interest in deterring such negligence resulting in wrongful death. *Johnson,* at 583-84.

Moreover, in an article analyzing UCLLA, a noted conflicts scholar has summarized the primary purposes of statutes of limitation as "(1) the protection of defendants from lawsuits on claims when fair defenses no longer may be available; and (2) the prevention of possibly unjust judgments in actions so delayed that a reliable determination of the relevant facts is jeopardized." (Footnote omitted.) Robert A. Leflar, *The New Conflicts-Limitations Act,* 35 Mercer L. Rev. 461, 470 (1984).

Each of these policies may be well served by either Washington's 3-year or Oregon's 2-year statute of limitation. While Oregon certainly has an interest in seeing its statute applied to bar its own liability in the present case, we cannot say that interest outweighs Washington's interest, as a codefendant and the forum state, in applying its own statute in the context of a statutory wrongful death action arising out of alleged negligence committed in Washington. Nor has Oregon presented argument or evidence that it has lost fair defenses or that judgment would be so delayed by applying Washington's 1-year longer statute that a reliable determination of the facts will be jeopardized.

The parties' justified expectations are also a relevant consideration under the Restatement of Conflicts § 6(2)(d). Chappell justifiably could have expected to be subject to Washington's laws while working, and certainly while driving in Washington. Williams's and Washington's similar expectations would not be unjustified, for similar reasons. By contrast, under common conflict of laws rules, Oregon cannot

necessarily expect to have its statute of limitation applied in another jurisdiction, if that jurisdiction has greater contacts and interests under the circumstances.

In the present case, we conclude that Washington's interests are greater in relation to the statute of limitation issue in the context of Williams's statutory wrongful death claim. This determination does not end our inquiry, however, because RCW 4.18.020(2)(b) will defer to the law governing other substantive issues in the case, if appropriate. We must therefore address whether Oregon has more significant interests than Washington in applying its nonclaim statute.

■■ Initially we note nonclaim statutes create and destroy rights, while limitations statutes merely extinguish the ability to seek a remedy, without creating or destroying the underlying rights themselves. This distinction was recognized in *Lane v. Department of Labor & Indus.*, 21 Wn.2d 420, 425-26, 151 P.2d 440 (1944):

> the statute which either by its plain terms or by the construction given it by the court makes the limitation of time inhere in the right or obligation rather than the remedy. . . . is sometimes referred to as a statute of nonclaim, and, strictly speaking, is not a statute of limitations at all. In its usual form the statute creates some right or obligation and a time is fixed within which the right must be asserted or the obligation sought to be enforced, or the same will be barred. When the limitation period expires, the right or obligation is extinguished and cannot be revived by a subsequent statute enlarging the time limitation. Illustrations of nonclaim statutes in this state are those providing for . . . claims for damages against municipal corporations.
>
> . . . .
>
> The other type of statute is one which relates only to the remedy and has nothing to do with any right or obligation, does not inhere in either, and is wholly independent of them. It is a statute of limitations in its strict sense, and, although a remedy may become barred thereunder, the right or obligation is not extinguished. It is a statute of repose.

Put another way,

> [those] statutes which create a substantive right unknown to the common law and in which time is made an inherent element of the right so created, are [nonclaim statutes,] not statutes of limitation.

*Bellevue Sch. Dist. 405 v. Brazier Constr. Co.*, 103 Wn.2d 111, 117-18, 691 P.2d 178 (1984) (RCW 4.16.310, which requires actions on construction contracts to commence within 6 years, is a statute of limitations that cannot run against state, not a nonclaim statute, which can). In contrast to statutes of limitation, the purposes of nonclaim statutes are generally to ensure notice to public bodies in sufficient time to allow prompt and thorough investigation of claims and claimants, and careful evaluation of the potential costs and advantages of litigation or settlement. *See, e.g., Hansen v. Wightman*, 14 Wn. App. 78, 99, 538 P.2d 1238 (1975); *Thornton v. Hamlin*, 41 Or. App. 363, 368, 597 P.2d 1307, 1309, *review denied*, 288 Or. 1 (1979). Moreover, compliance with such statutes is a condition precedent to bringing claims against governmental bodies. *See, e.g., Andrews v. State*, 65 Wn. App. 734, 736-38, 829 P.2d 250 (1992).

In light of these policies, recognized by both States, Oregon certainly has a direct and substantial interest in receiving notice under the provisions of its nonclaim statute. By contrast, we discern no significant interest of Washington's in denying to Oregon what it requires for itself. The opposite conclusion unduly strains interstate cooperation on a joint project of substantial importance to the two States and the nation.[2]

Moreover, neither Chappell nor Williams had or has any justified expectation that they may sue Oregon in a Washington court without regard to Oregon's nonclaim statute, which requires that a claim must be filed with the State as condition precedent to suing it in any court. On the other hand, Oregon could certainly justifiably expect that its nonclaim statute would protect it equally in Washington as elsewhere. Furthermore, it is not unreasonable to uniformly require or expect plaintiffs to file notice of claims with states they intend to sue, regardless of forum choice.

In sum, because Washington has no substantial interest in denying Oregon the benefit of its nonclaim statute, we

---

[2]The bridge in question, as an integral part of both interstate commerce and the nation's defense, is required to meet certain governmental specifications under 23 U.S.C. §§ 101(a), (b), 103(e).

conclude that Oregon has the greater interest in application of its nonclaim statute under the facts of the present case. There is no dispute that Williams failed to file a claim with Oregon within a year after the accident; therefore, we affirm the trial court's grant of summary judgment on this issue. Moreover, this conclusion obviates an analysis of whether Oregon's damages cap should apply.

## B

### Comity

Oregon also argues that considerations of comity appropriately led the trial court to decline jurisdiction, relying upon *Fernandez v. Department of Hwys.*, 49 Wn. App. 28, 741 P.2d 1010 (1987). In *Fernandez*, this court found that, although jurisdiction could be taken over Oregon in a case involving a trespasser on a different bridge between Washington and Oregon, considerations of comity allowed Washington to decline jurisdiction. As we noted there, the United States Constitution allows, but does not require, such a refusal of jurisdiction. *See Nevada v. Hall*, 440 U.S. 410, 426, 59 L. Ed. 2d 416, 428, 99 S. Ct. 1182, *reh'g denied*, 441 U.S. 917 (1979). Again, a complete analysis of this issue is obviated by our conclusion that Williams's failure to give notice of claim to Oregon bars this action.

Nevertheless, we see no reason to require Oregon to return to a Washington court only to have the case dismissed for failure to file notice of claim. We note that, had Williams given such notice, an entirely different conclusion might be reached in the present case. Nonetheless, because Oregon is entitled to the benefit of its nonclaim statute, considerations of comity and convenience lead us to affirm the trial court on this ground as well.

Affirmed.

MORGAN, C.J., and ALEXANDER, J., concur.