**Julie DUNCAN, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC., Defendant.**

No. C98–130Z.

United States District Court, W.D. Washington, at Seattle.

Nov. 5, 2001.

---

See also 208 F.3d 1112.

Steve W. Berman, Hagens Berman LLP, Seattle, WA, for plaintiff.

Ralph H. Palumbo, Philip S. McCune, Summit Law Group, Seattle, WA, Thomas W. Tinkham, Jean F. Holloway, Holly S.A. Eng, Dorsey & Whitney, Minneapolis, MN, for defendant.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on defendant's motion for summary judgment, docket no. 136, plaintiff's motion for class certification, docket no. 53, and plaintiff's motion to certify issues to the Washington Supreme Court, docket no. 140. The Court heard oral argument and took the motions under advisement. The Court, having reviewed all of the pleadings filed in connection with the underlying motions and having considered the arguments of counsel, now enters this order. The Court hereby GRANTS the defendant's motion for summary judgment on the medical monitoring cause of action, docket no. 136, DENIES plaintiff's motion for class certification, docket no. 53, and DENIES plaintiff's motion to certify issues to the Washington Supreme Court, docket no. 140.

### Background

Plaintiff Julie Duncan filed this lawsuit against her employer, defendant Northwest Airlines, Inc., claiming damages in negligence for injuries caused as a result of defendant's policy that exposed its employees to second-hand smoke on certain international flights. The plaintiff worked as a flight attendant on "smoking" flights between Seattle and Asia. She alleges that the defendant continued to allow smoking on international flights although it knew that second-hand smoke posed a health risk to the flight attendants and it had banned smoking on all domestic flights. Thousands of flight attendants allegedly were exposed to second-hand smoke on these flights. Some were non-smokers, while others may have smoked or may have lived with family members who smoked. The flight attendants in the proposed class worked in this environment for varying times before the defendant discontinued smoking on the flights in 1998.

Plaintiff alleges that she currently suffers injuries from exposure to the second-hand smoke, including irritated eyes, sinus problems, breathing problems, sore throats, and other present complaints. Complaint, docket no. 1, at ¶ 50. She also contends that she has a significantly increased risk of contracting a serious disease such as lung cancer, heart disease or respiratory disease as a result of her work as a flight attendant on the smoking flights. Declaration of James L. Repace, docket no. 54, at Conclusions, ¶¶ 4–8.

Based on her alleged injuries, plaintiff asserts a claim for negligence and asserts a separate cause of action for "medical moni-

toring." James Repace, plaintiff's expert, has established 587 hours of airplane exposure as a threshold level to increase risk of disease. *Id.* at ¶ 84. Plaintiff claims the exposure to smoke warrants continued medical observation and testing to determine whether illnesses develop in the future. Plaintiff clarified at oral argument that she also seeks to certify a class for the independent tort of medical monitoring or, in the alternative, to certify a class for the negligence claim with medical monitoring as a remedy.

The focus of this litigation relates to plaintiff's claim for medical monitoring. Plaintiff contends that the medical monitoring program would serve the following purposes:

> (i) notifying flight attendants of existing information concerning the effects of prolonged inhalation of second-hand tobacco smoke; (ii) to the extent necessary, funding a further unbiased study of those effects; (iii) gathering and forwarding to treating physicians information relating to the diagnosis and treatment of injuries which may result from Class members' prolonged inhalation of second-hand tobacco smoke; (iv) aiding the early diagnosis and treatment of resulting injuries and illnesses; and (v) providing funding for diagnosis and treatment of resulting injuries and illnesses.

Complaint, docket no. 1, at ¶ 60. Plaintiff requests that this Court oversee a monitoring program, which would be run by court-appointed trustees. Plaintiff's Reply, docket no. 127, at 34. Plaintiff also seeks compensatory damages for her existing personal injuries.

Plaintiff proposes to certify her complaint as a class action on behalf of flight attendants similarly situated. The class would encompass the following persons:

> All present and former Northwest Airlines flight attendants who (1) during the period January 1, 1988 to the present served as flight attendants aboard Northwest Airlines Trans–Pacific international flights where smoking was permitted; (2) whose working time on board exceeded 587 hours; and (3) who at the time of their employment resided in the states of: California, Illinois, Washington, Michigan, Minnesota, Hawaii and New York.

Motion, docket no. 53. Plaintiff seeks to bifurcate the trial and address liability in the first phase. Plaintiff's Reply, docket no. 127, at 31. The second phase would address individual issues, including causation for physical injury claims and damages for those claims. *Id.* The Court has not ruled on the request for bifurcation.

## Preliminary Discussion

### A. Workers' Compensation Preemption

▮ Plaintiff seeks to sue her employer, Northwest Airlines, under Washington law and to represent a class of plaintiffs who reside in six other states. As an initial matter, plaintiff may sue her employer in Washington under *Birklid v. Boeing Co.*, 127 Wash.2d 853, 904 P.2d 278 (1995), because she alleges that the defendant "had actual knowledge that injury was certain to occur, and actual knowledge that injury did in fact occur." Complaint, docket no. 1, at ¶ 53; Minute Order, docket no. 172. The Washington Supreme Court has permitted employees to sue their employer for intentional torts under very limited circumstances where an employee alleges "deliberate intention." *Birklid,* 127 Wash.2d at 865, 904 P.2d 278. Since the decision in *Birklid,* the Washington Legislature has codified this remedy against an employer in Washington. RCW 51.24.020 (2000). All other claims by employees in Washington are limited to the remedies provided by the Workers' Compensation laws of this state. *Id.*

Because plaintiff seeks to represent a class of flight attendants from six other states, the Court has reviewed the law of those states to determine whether employees may sue their employers and, if so, under what circumstances.[1] The Court concludes, and the plaintiff conceded at oral argument, that Hawaii's Workers' Compensation Law is the

---

1. This Court sits in diversity as to these claims and must apply the choice of law rules on the state in which it sits. *See 389 Orange St. Partners v. Arnold,* 179 F.3d 656, 661 (9th Cir.1999).

Washington courts would apply the law of the state with the most significant relationship to the cause of action. *Williams v. State of Wash.,* 76 Wash.App. 237, 241, 885 P.2d 845 (1994). Be-

exclusive remedy for employees in Hawaii and does not contain an intentional tort exception. Haw.Rev.Stat. § 386–5 (2000). Therefore, flight attendants who reside in Hawaii cannot bring a claim against their employer, Northwest Airlines, and they cannot become members of any proposed class. The Court also concludes that the Workers' Compensation system is the exclusive remedy in California unless the employer is accused of intentional misconduct going beyond "failure to assure that the tools or substances used by the employee or the physical environment of a workplace are safe." *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 233 Cal.Rptr. 308, 729 P.2d 743, 749 (1987). Because plaintiff's allegations do not satisfy that standard, flight attendants residing in California also are precluded from suing their employer in this litigation. The motions will therefore be analyzed for a possible class consisting only of flight attendants from Washington, Illinois, Michigan, Minnesota, and New York.

## B. Summary Judgment Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to present specific facts that show there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must draw all reasonable inferences from the evidence in favor of the non-moving party. *Id.*

## Analysis

### A. Motion for Summary Judgment on Medical Monitoring Claim

Medical monitoring is "one of a growing number of non-traditional torts that have developed in the common law to compensate plaintiffs who have been exposed to various toxic substances." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 849 (3d Cir.1990). A claim for medical monitoring seeks to recover future costs of diagnostic testing necessary to detect latent diseases that may develop in the future. *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424, 429 (1999). The cause of action recognizes that a latency period may exist between exposure and the onset of illness. *E.g., Petito v. A.H. Robins Co., Inc.*, 750 So.2d 103 (Fla. 3rd DCA 1999); *Paoli*, 916 F.2d at 850. During that time, the plaintiff might not suffer any present injury that would allow recovery under traditional tort theories. *Paoli*, 916 F.2d at 850. To provide the plaintiff with recourse, some courts have recognized a separate cause of action that entitles the plaintiff to medical testing regardless of present injury to detect illnesses in their early stages. *Id.* Other courts allow medical monitoring only as a remedy to an established tort, such as negligence, rather than permit it as a "stand-alone" claim. *E.g., Day v. NLO*, 851 F.Supp. 869, 880 (S.D.Ohio 1994); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 823 (1993).

Defendant argues that Washington does not recognize a claim for medical monitoring so plaintiff's claim must fail as a matter of law. Plaintiff counters that Washington courts would recognize such a new cause of action for medical monitoring or, in the alternative, would recognize medical monitoring as a remedy to a negligence claim.

### 1. Washington Law

No Washington appellate court has spoken directly on medical monitoring, but the cases provide substantial guidance. The Washington Supreme Court has traditionally deferred to the state legislature for the creation of

cause the class plaintiffs reside in different states with different compensation schemes, all of which have an interest in the cause of action, this Court concludes that it will apply the laws of the various states. *E.g., Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001) (reaching similar conclusion in medical monitoring class action motion when applying choice of law principles of California).

new causes of action. *See, e.g., Burkhart v. Harrod*, 110 Wash.2d 381, 385–86, 755 P.2d 759 (1988). The legislature has a "greater ability to fully explore the spectrum of competing societal interests," while the judiciary "is the least capable of receiving public input and resolving broad public policy questions based on a societal consensus." *Id.* at 382, 385, 755 P.2d 759. In following this principle, Washington's highest court has declined to recognize proposed causes of action when "an employee's rights are already protected by" another remedy. *White v. State*, 131 Wash.2d 1, 20, 929 P.2d 396 (1997) (declining to recognize retaliatory lateral transfer of employee when contract remedy existed); *cf. Burke & Thomas, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 92 Wash.2d 762, 772–73, 600 P.2d 1282 (1979) (plurality opinion) (declining to recognize third party cause of action during strike when federal labor law covers area).

■ The rule is not absolute, and the Washington Supreme Court sometimes has chosen to recognize new causes of action. *E.g., Roberts v. Dudley*, 140 Wash.2d 58, 63, 993 P.2d 901 (2000) (wrongful discharge in violation of public policy); *Reid v. Pierce County*, 136 Wash.2d 195, 961 P.2d 333 (1998) (invasion of privacy). However, the Court is more likely to take this step only when the plaintiff would have no other remedy. For example, the *Roberts* Court recognized a wrongful discharge tort because no statutory remedy existed. *Roberts*, 140 Wash.2d at 69–70, 993 P.2d 901 (noting legislature had already made clear in several statutes that it intended to prevent sex discrimination but plaintiff had no specific remedy). Because this Court finds that plaintiffs with a present injury may seek medical monitoring as a remedy to a negligence cause of action under existing Washington law, there is no compelling reason for this Court to create, as urged by plaintiff, a new, separate tort of medical monitoring. This Court concludes that if this issue were presented to the Washington Supreme Court it would decline to create a new cause of action in this case.

■ The Washington Supreme Court's treatment of "enhanced risk" cases supports this conclusion. The Washington Supreme Court requires plaintiffs to show a present, existing injury before pursuing a negligence-based cause of action. *See Koker v. Armstrong Cork, Inc.*, 60 Wash.App. 466, 481–82, 804 P.2d 659 (1991); *Sorenson v. Raymark Indus., Inc.*, 51 Wash.App. 954, 957, 756 P.2d 740 (1988). An enhanced risk of disease alone is not enough, except in limited medical malpractice cases where the plaintiff has no other redress. *Koker*, 60 Wash.App. at 482, 804 P.2d 659. In other situations, there is no reason to redress possible future harm because the plaintiff "may bring another action when actionable injury results." *Id.* Where plaintiffs with present actual injury seek compensation for potential future diseases, they must show with "reasonable certainty" that they will contract the disease. *Id.* at 481–82, 804 P.2d 659.

The most common iteration of a "standalone" medical monitoring cause of action does not require proof of present injury. *See Paoli*, 916 F.2d at 852.[2] The formula's "injury" element requires only enhanced risk without a showing of present injury to sustain a cause of action. *Id.* Presumably, this approach would allow the plaintiff to sue once for medical monitoring and then sue again later if he or she develops the disease. This result is contrary to Washington law,[3] which

---

**2.** The *Paoli* decision was a toxic tort case arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Federal Employers' Liability Act ("FELA") and various pendent state law claims arising under Pennsylvania law. The *Paoli* court held that the Supreme Court of Pennsylvania would recognize a new cause of action for medical monitoring requiring the plaintiff to prove that:

> 1. Plaintiff was significantly exposed to a proven hazardous substance through the negligent acts of defendant.

> 2. As a proximate result of the exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.
> 3. Increased risk makes periodic diagnostic medical examinations reasonably necessary.
> 4. Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

*Paoli*, 916 F.2d at 852.

**3.** The Ninth Circuit has favorably discussed the *Paoli* approach in considering recover of the costs of medical monitoring upon a showing of mere exposure without disease symptom but it

is grounded in actual present injury and limits recovery for enhanced risk.

Plaintiff cites four cases in Washington that purport to recognize a stand-alone cause of action for medical monitoring. However, the language exists only in dicta or without any significant analysis. *See In re Hanford Nuclear Reservation Litig.*, 780 F.Supp. 1551 (E.D.Wash.1991); *In re Berg*, No. 96 Civ. 3151 (E.D.Wash. Aug. 26, 1999); *Branin v. Asarco, Inc.*, No. 93 Civ. 5132 (W.D.Wash. Dec. 22, 1994); *St. John v. American Home Prods. Corp.*, No. 97–2–06368–4 (Spokane County Super. Ct. Dec. 4, 1998). For example, the *Hanford* court stated that medical monitoring is "fully within the purview of the state's law." *Hanford*, 780 F.Supp. at 1562. Despite this language, the court disposed of the case by finding CERCLA preemption, and discussion of the medical monitoring tort is solely dicta. *Id.* at 1562–63. The *Berg* court found that Washington would recognize *either* a cause of action for medical monitoring or a remedy of medical monitoring to an existing tort but did not decide which one. *Berg*, No. 96 Civ. 3151, Order re Summary Judgment (Aug. 26, 1999), at 90. Again, the discussion came in dicta, because the Court's ruling turned on whether the Price–Anderson Act would bar a claim for medical monitoring. *See id.* The *Branin* court declined to dismiss a medical monitoring claim in a class action but did not analyze Washington law. *See Branin*, No. 93 Civ. 5132, Order on Motion for Summary Judgment, docket no. 419. In *St. John*, the only state court decision cited by plaintiff, the court recognized only that the plaintiff could pursue medical monitoring as an equitable claim under the state Product Liability Act. *St. John*,

No. 97–2–06368–4, Order Denying Defendants' Motion to Dismiss Plaintiffs' Complaint, docket no. 303. None of these cases decided whether medical monitoring would be a separate tort or a remedy to an existing tort.

### 2. Medical Monitoring in Other States

Medical monitoring remains a novel, non-traditional tort and remedy. *Thompson v. American Tobacco Co.*, 189 F.R.D. 544, 552 (D.Minn.1999). Approximately thirty states have not even addressed the issue. *See Badillo v. American Brands, Inc.*, 16 P.3d 435, 438–39 (Nev.2001) (describing cases). Among those that have considered medical monitoring, there is a lack of consensus whether to recognize it as a separate cause of action or only as a remedy to an existing tort. *Id.* at 438, 440. Most of the states that have considered the issue have chosen to recognize a remedy rather than create a separate, new cause of action. *Id.* at 440. Even the states involved in this litigation are divided as to whether to allow a separate cause of action or to limit medical monitoring to a remedy grounded in a traditional tort. For example, Michigan has recognized it as a remedy only, while New York remains unclear. *See Meyerhoff v. Turner Constr. Co.*, 210 Mich.App. 491, 534 N.W.2d 204, 204 (1995). *Compare Askey v. Occidental Chem. Corp.*, 102 A.D.2d 130, 135, 477 N.Y.S.2d 242 (N.Y.App.Div.1984) (referring to medical monitoring as a remedy), *with Patton v. General Signal Corp.*, 984 F.Supp. 666, 674 (W.D.N.Y.1997) (interpreting *Askey* as recognizing an independent cause of action for medical monitoring). In addition, even

has done so only in the context of laws other than those of Washington. *See In re Marine Asbestos Cases*, 265 F.3d 861, 865 (9th Cir.2001) (Jones Act); *Abuan v. General Electric Co.*, 3 F.3d 329, 334 (9th Cir.1993) (law of Guam). Without any reported Guam cases on point, the *Abuan* court looked to "current trends in toxic tort jurisprudence." *Abuan*, 3 F.3d at 332. The court concluded that under *Paoli*, a plaintiff could recover the costs of medical monitoring upon sufficient showing. *Id.* at 334. Yet it is important to recognize that the *Abuan* court adopted the *Paoli* test against the backdrop of Guam's "extremely plaintiff-friendly" law allowing suits by "any person who has been exposed to toxic substances at a level above federally

permitted levels of exposure." *Abuan*, 3 F.3d at 335. Furthermore, the *Abuan* plaintiffs failed to satisfy the *Paoli* factors, thereby rendering the "adoption" of a tort of medical monitoring dicta. *Id.* at 334–35 (noting that plaintiffs' expert failed to prove significance of increased risk for any individual). Similarly, the *Marine Asbestos Cases* court did not reach the question of whether medical monitoring is available under the Jones Act, but instead assumed without deciding that it might be and concluded that the plaintiffs had not satisfied the *Paoli* factors. *Marine Asbestos*, 265 F.3d at 867. This Court does not believe the same assumption is warranted by a federal district court attempting to discern the frontier of Washington tort law.

among those states that treat medical monitoring similarly as either a remedy or a new cause of action, there is no uniformity regarding the elements of the claim, as some states do not require a present injury while others do. *Compare Potter* 25 Cal.Rptr.2d 550, 863 P.2d at 822–23 (Cal.1993) (requiring no present injury when medical monitoring is remedy only), *with Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1523 (D.Kan. 1995) (requiring present injury where medical monitoring is remedy only).

The lack of consensus has caused some courts to proceed with caution. Recently, the Supreme Court of Nevada declined to recognize a separate medical monitoring claim in a class action against tobacco companies for second-hand smoke exposure. *Badillo*, 16 P.3d at 441. The Nevada Court cited the ambiguity in the case law and also described many of the same concerns expressed in the Washington cases that address novel tort theories. *Id.* at 440–41. The Court acknowledged that it can and does recognize new causes of action but prefers to leave the task to the legislature. *Id.* at 440. Moreover, the Court expressed concern over the causation and proof problems associated with a claim based on exposure to environmental tobacco smoke. *Id.* at 441. Ultimately, the Court declined to exercise its power to recognize new causes of action where the law from other jurisdictions was not settled. *Id.* The Washington Supreme Court has exercised similar caution in recognizing new causes of action where other jurisdictions are divided. *See, e.g., White*, 131 Wash.2d at 19, 929 P.2d 396 (refusing to recognize tort of wrongful transfer).

The United States Supreme Court has cited competing systemic concerns as reasons for hesitation at the state level in recognizing a tort of medical monitoring. In *Metro–North Commuter R.R. v. Buckley*, 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997), the Court did not "find sufficient support in the common law for the unqualified rule of lump-sum damages recovery [through the creation of a full-blown traditional, tort law cause of action]" for medical monitoring by asymptomatic [4] plaintiffs under the Federal Employers' Liability Act (FELA). *Buckley*, 521 U.S. at 444, 117 S.Ct. 2113. Although distinguishable from the case at hand, *Buckley* is informative through its discussion of the potential systemic effects of recognizing a stand-alone tort of medical monitoring. *See id.* at 441–44, 117 S.Ct. 2113. The concern most salient to this case is the concern for the flood of litigation that might result from such a recognition.[5] *Id.* at 442, 117 S.Ct. 2113. The Court expressed its aversion not to a flood per se, but to the potential damage from less important cases consuming scarce resources, and "the systemic harms that can accompany 'unlimited and unpredictable liability.'"[6] *Id.* at 442, 117 S.Ct. 2113. The *Buckley* concerns are a reminder of the economic costs that would resonate in Washington beyond this case were this Court to recognize a stand-alone tort of medical monitoring. *Buckley* counsels caution that this Court finds appropriate to heed.

▪ In light of Washington's hesitation to recognize new torts, its reluctance to allow damages for enhanced risk without an accompanying present injury, and the ambiguity in case law from other states, this Court holds that there is no cause of action for medical monitoring as an independent tort

4. Significantly, the *Buckley* Court assumed that medical monitoring costs would be available as damages once a plaintiff exhibits symptoms. *Buckley*, 521 U.S. at 438, 117 S.Ct. 2113.

5. Two other concerns identified by *Buckley*-that extra monitoring costs pose specific difficulties for judges and juries, 521 U.S. at 441–42, 117 S.Ct. 2113, and that the recognition of such a to would ignore the presence of existing alternative sources of payment, *id.* at 442–43, 117 S.Ct. 2113are more acute where the plaintiff is requesting a single, lump-sum payment. Here, plaintiff is seeking damages, but the contours of the relief requested have been a moving target throughout the litigation. *See infra*, n.10 (noting plaintiff's varying statements regarding damages).

6. While one state court has approved steps that may be taken to alleviate the concert identified in *Buckley, see Petito*, 750 So.2d at 106, the Alabama Supreme Court recent concurred with the *Buckley* reasoning and refused to recognize a stand-alone tort cause of action for asymptomatic plaintiffs. *Hinton v. Monsanto Co.*, 2001 WL 1073699, *3–4 (Ala. Sept.14, 2001).

under Washington law.[7] Recognizing medical monitoring as a remedy to an established tort poses none of the same concerns. The elements of negligence are clear in Washington and the Court would not be usurping the legislature's roll by creating a new tort when one is not needed. The plaintiff in this case has alleged existing injury in addition to enhanced risk of disease from exposure to second-hand smoke. Complaint, docket no. 1, at ¶ 50. Therefore, she may pursue medical monitoring as a remedy to her negligence claim under Washington law. The defendant's motion for summary judgment is GRANTED, and the medical monitoring claim is dismissed.

The plaintiff has moved to certify this question to the Washington Supreme Court. Docket no. 140. "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Air–Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 186 (9th Cir.1989). This Court is fully capable of interpreting Washington law and has done so. Based on the above analysis, there is no reason to believe the Washington Supreme Court would recognize an independent tort of medical monitoring. Because the Court is able to resolve the issues without certification, plaintiff's motion is DENIED.

## B. Motion for Class Certification

The Court must conduct a "rigorous analysis" before certifying a class. *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir.1996). In doing so, the Court possesses "broad discretion" within the framework of Fed.R.Civ.P. 23. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001). The party seeking class certification bears the burden of proof and must meet each of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See, e.g., Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).

The Court's threshold concern is whether the proposed class meets the Rule 23(a) requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *E.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Rule 23(a), unlike 23(b), is construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). Rule 23(b) requires that the proposed class demonstrate that either (1) prosecution of separate actions would risk creating incompatible standards of conduct for the defendant, (2) the action is for injunctive relief, or (3) common questions of law or fact predominate over individual questions and class action is a superior method of adjudication. *E.g., Amchem*, 521 U.S. at 614, 117 S.Ct. 2231.

Plaintiff moves to certify a class for medical monitoring either as a separate cause of action or as a remedy to negligence. Because plaintiff's claim for medical monitoring as an independent cause of action will be dismissed, the Court will analyze the motion in connection with plaintiff's alternative request to certify the negligence claim with a medical monitoring remedy. Plaintiff brings her negligence claim under Washington law, which requires a present injury. *See Koker*, 60 Wash.App. at 481–82, 804 P.2d 659. The Court will therefore analyze the motion based only on persons who already have a present injury or harm.[8] The proposed class fails to meet the requirements of either 23(b)(2) or 23(b)(3) for the reasons outlined below. As a result the motion to certify a class will be DENIED.

### 1. Rule 23(a)

The parties do not seriously dispute that the proposed class meets the requirements of Rule 23(a) and focus their arguments instead on Rule 23(b). The Court analyzes both Rule 23(a) and 23(b).

---

7. Because Washington does not recognize a claim for medical monitoring, there is no need to address the defendant's argument that the plaintiff has not provided enough evidence for her claim to survive summary judgment if a medical monitoring claim exists.

8. To the extent plaintiff also seeks to represent a class of persons who would bring negligence claim without present injury under the law of other states, the Court declines to certify such a class.

A proposed class meets the numerosity requirement of Rule 23(a) if "the class is so large that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Defendants do not contest the numerosity element. Although it is unclear how many potential class members exist, the plaintiff alleges 4,000 people, which clearly meets the standard. Complaint at ¶ 12; *see also Leyva v. Buley,* 125 F.R.D. 512 (E.D.Wash.1989) (certifying class of 50 members).

The second element of Rule 23(a) requires that a common question of law or fact exist for the members of the proposed class. This element is less rigorous than the predominance requirement of Rule 23(b)(3). *Hanlon,* 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019. Although members of the proposed class may possess different avenues of redress, commonality is established when their claims stem from the same source. *Id.* at 1020. The proposed plaintiffs in the remaining five states share some common questions of law and fact. They all allege exposure to second-hand smoke on the defendant's flights. They all seek to prove willfulness by the defendant in allowing exposure to second-hand smoke. They all seek medical monitoring as the end result of their lawsuits. Although the actual claims in each state may differ, and individual circumstances raise disparate factual issues, under the "permissive" and "less rigorous" standards of Rule 23(a), the proposed class meets the commonality requirement.

Third, Rule 23(a)(3) is satisfied when the representative's claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. Again, the defendant has not seriously challenged typicality. Plaintiff alleges present injury, is seeking recovery on a negligence claim under Washington law, and specifically seeks medical monitoring as a component of damages to this claim. To the extent that plaintiff represents a class of presently injured plaintiffs

seeking medical monitoring as a remedy to an already existing cause of action, she is typical of the class of plaintiffs.

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This element examines both whether the named plaintiff or counsel have any conflicts of interest with other class members and whether the named plaintiff and counsel will vigorously prosecute the case. *Hanlon,* 150 F.3d at 1020. "The purpose of the adequacy of representation requirement is to ensure that the rights of absent class members are represented vigorously by qualified counsel and by the class representatives." *Smith v. University of Wash. Law School,* 2 F.Supp.2d 1324, 1343 (W.D.Wash.1998) (citing *National Assoc. for Mental Health v. Califano,* 717 F.2d 1451, 1458 (D.C.Cir.1983)). There is no evidence that the named plaintiff or her counsel would pursue this case with anything less than vigor on behalf of the proposed class. Furthermore, although differences exist between individual plaintiffs and the state law applicable to those plaintiffs, that issue goes to commonality. *See Smith,* 2 F.Supp.2d at 1342–43. The proposed class meets the adequacy requirement.

### 2. Rule 23(b)

Plaintiff moves to certify the proposed class under Rule 23(b)(2) or Rule 23(b)(3).[9] Rule 23(b)(2) is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief ..." Fed.R.Civ.P. 23(b)(2). Rule 23(b)(3) requires that common issues predominate over individual questions and that class resolution is superior to other methods of adjudication. Fed.R.Civ.P. 23(b)(3). The proposed class fails to meet either standard.

### a. Rule 23(b)(2)

Class certification under Rule 23(b)(2) "is appropriate only where the primary relief sought is declaratory or injunctive," and when monetary damages are

9. Plaintiff's briefing originally sought certification under 23(b)(1) as well, but counsel clarified during oral argument that the plaintiff was no longer requesting certification under 23(b)(1).

"merely incidental." *Zinser*, 253 F.3d at 1195 (internal citations omitted). Courts have split on whether medical monitoring relief is compensatory or injunctive. *Compare Zinser*, 253 F.3d at 1195 (concluding injunction was merely incidental to money in claim for medical monitoring damages), *with Day v. NLO*, 851 F.Supp. 869, 886–87 (S.D.Ohio 1994) (holding administration of medical monitoring fund to fall within court's injunctive powers). The Ninth Circuit recently denied class certification based on a medical monitoring claim that requested funding for future treatment and damages. *Zinser*, 253 F.3d at 1196. The *Zinser* court distinguished pure monitoring programs from those that include significant funding and therefore fail to meet the 23(b)(2) standard. *Id.* at 1195–96. It cited as "strikingly persuasive" a decision to deny class certification when the plaintiffs sought a "reserve fund" that would pay for treatment of disease and damages as well as monitoring. *Id.* (citing *O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 377 n. 23 (C.D.Cal.1997)). It also explained that "many courts have declined to certify medical monitoring classes when joined with requests for funding and compensation." *Id.* at 1196; *see also Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 479–80 (D.Colo.1998) (denying certification where plaintiffs sought treatment); *Arch v. American Tobacco Co.*, 175 F.R.D. 469, 483–85 (E.D.Pa.1997) (same) The *Zinser* court concluded that because the proposed class sought a reserve fund that would cover future treatment and damages as well as moni-

toring, the district court properly exercised its discretion in denying the class. *Zinser*, 253 F.3d at 1196.

The proposed class here seeks a fund established by defendants. Although the plaintiff now characterizes the relief as a program rather than a fund, the bottom line is money. The program "contains no provisions for anything besides an exchange of money. cannot be authorized as injunctive relief." *Werlein v. United States*, 746 F.Supp. 887, 895 (D.Minn.1990), *vacated in part on other grounds*, 793 F.Supp. 898 (D.Minn.1992). Defendant would not be required to pay simply for research and information sharing; the proposal would require ongoing payments for testing and treatment of future illnesses plaintiff may develop.[10] Moreover, although the plaintiff does not seek lump sum damages, she does seek individual damages, which distinguishes the proposed relief from pure monitoring programs.[11] Money is not merely incidental to plaintiff's requested relief; it is an integral part of the requested relief. Therefore, the proposed class does not meet the requirements of Rule 23(b)(2).

### b. Rule 23(b)(3)

The initial inquiry under Rule 23(b)(3) is whether common issues predominate over individual questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. In analyzing cohesiveness, "it is not enough to establish

---

**10.** Plaintiff's various characterizations of the relief sought during this litigation have changed but have always focused on damages and a fund of money:

"Duncan and the class are entitled to ... a medical monitoring fund ... to detect and treat illnesses." Complaint at ¶ 57.

"Plaintiff Duncan and the Class are entitled to damages for all diseases caused by exposure to second-hand smoke." Complaint at ¶ 58.

"[T]his irreparable threat to their health can only be mitigated by the creation of a medical monitoring fund ... providing funding for diagnosis and treatment of resulting injuries an illnesses." Complaint at ¶ 60.

"Awarding damages to plaintiff and members of the Class." Complaint at ¶ 60.

"An order requiring Northwest to establish a medical monitoring fund, in a sufficient amount

to be proven at trial ...." Complaint at Prayer for Relief.

"[F]uture medical-monitoring expenses are recoverable as damages ...." Plaintiff memorandum, docket no. 58 at 20.

"Thus, Ms. Duncan's claim for medical monitoring is, at the very least, a compensable form of damages ...." Plaintiff's Memorandum, docket no. 149.

**11.** Plaintiff relies on *Day* for the proposition that a monitoring fund is injunctive. The *Day* court, however, appeared to be acting for expediency's sake. The court expressed concern that individual administration of medical monitoring "is unworkable" and also allowed certification even though the class sought punitive damages. *Day*, 851 F.Supp. at 886–87. This expansive view of injunctive relief is directly contrary to Ninth Circuit law. *See Zinser*, 253 F.3d. at 1196.

that common questions of law or fact merely exist, as it is under Rule 23(a)(2)'s commonality requirement." *O'Connor*, 180 F.R.D. at 379. Instead, the inquiry must focus on the law and facts "that qualify each class member's case as a genuine controversy." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. The Supreme Court has urged caution when plaintiffs were "exposed to different ... products, for different amounts of time, in different ways, and over different periods." *Id.* at 624, 117 S.Ct. 2231. As other courts have stated, "[e]xposure to environmental tobacco smoke raises many complex issues of legal causality and proof." *Badillo*, 16 P.3d at 441. Once it is satisfied that common issues predominate, the court must determine that class action adjudication would be the superior method of resolving the cases. Fed.R.Civ.P. 23(b)(3).

▇▇ Plaintiff contends that a class action under Rule 23(b)(3) would be the superior way to conserve judicial resources and expedite this litigation. This argument may have merit, but the proposed class fails to meet the predominance requirement of Rule 23(b)(3) and therefore cannot be certified even if it is the superior method of adjudication. *See Amchem*, 521 U.S. at 622, 117 S.Ct. 2231 (holding that uniform benefits stemming from class action are not enough to certify a class if common issues do not predominate). It is true that some common issues of law and fact exist, such as whether the defendant had a duty to provide a smoke-free workplace and whether second-hand smoke has caused the alleged existing injuries, but these issues do not predominate.

First, the plaintiff is pursuing a negligence claim, which requires an individualized examination of causation and proof of present injury.[12] *See Abuan v. General Elec. Co.*, 3 F.3d 329, 334 (9th Cir.1993) (noting causation is an individual issue). Indeed, the Advisor

Committee for the 1966 revision to Rule 23 explicitly noted the potential incompatibility of Rule 23(b)(3) actions and mass torts:

A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

Fed.R.Civ.P. 23, advisory committee's note to 1966 amendments.

In the medical monitoring context, several courts have declined to certify classes that seek medical monitoring because of the individualized factual issues involved.[13] *E.g.*, *Zinser*, 253 F.3d at 1189–90 ("[T]o determine causation and damages ... it is inescapable that many triable individualized issues may be presented"); *Barnes v. American Tobacco Co.*, 161 F.3d 127, 146 (3d Cir.1998); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 97 (W.D.Mo.1997); *Thompson*, 189 F.R.D. at 555 ("[E]ach Plaintiff seeking participation in a medical monitoring program must establish injury."); *O'Connor*, 180 F.R.D. at 381 ("Each claimant may have varying risk factors not associated with Defendants' conduct."); *Thomas v. FAG Bearings Corp.*, 846 F.Supp. 1400, 1404 (W.D.Mo. 1994) (stating individualized requirements of proof would "start hundreds or thousands of individual mini-trials on complex causation and damages issues").

The *Amchem* Court rejected a class for similar reasons. There, the proposed class would have encompassed various claims from several states and would have included plaintiffs with present injuries as well as those

---

**12.** Plaintiff proposed bifurcating the trial, with general liability established in the first phase and individual issues relating to physical injury tried in the second phase. Because the plaintiff must prove present injury under her negligence claim, the bifurcation scheme would not say the class. Individual issues of injury and causation must be tried to determine liability under Washington law.

**13.** This approach accords with the current trend at the district court level in other toxic to cases where individual issues, particularly causation, have been held to predominate. *See, e.g. Kohn v. American Housing Foundation, Inc.*, 178 F.R.D. 536, 542–43 (D.Colo.1998); *Arch v. American Tobacco Co.*, 175 F.R.D. 469, 485–86 (E.D.Pa. 1997); *Puerto Rico v. M/V Emily S.*, 158 F.R.D. 9, 12–13 (D.P.R.1994).

facing increased risk of harm. *Amchem,* 521 U.S. at 602–603, 117 S.Ct. 2231. The Supreme Court ruled that the shared experience of being exposed to asbestos products supplied by the defendants could not overcome the "greater number of questions peculiar" to the individual plaintiffs. *Id.* at 623–24, 117 S.Ct. 2231. One particular problem noted by the Court was that "[e]ach has a different history of cigarette smoking, a factor that complicates the causation inquiry." *Id.* at 624, 117 S.Ct. 2231.

Similarly, the jury in the current case would be required to consider more than whether the defendant exposed the proposed class to second-hand smoke. The evidence of alleged "present injury" would necessarily differ according to each plaintiff and would require examination of the individual's medical records to establish that injury does indeed exist. Proof of causation would raise additional individual issues. The proposed class includes flight attendants who worked on the aircraft for different time periods, who may have smoked, who may have immediate family members who smoke, and who have different medical backgrounds. Plaintiff's expert admits that the risk of disease varies according to these differing facts. Declaration of James L. Repace, docket no. 54, at ¶ 84, 88 (asserting threshold risk of increased disease reached at 587 hours of exposure with additional increase after that point; flight attendants with asthma have a different increased risk).

Additional variables include how many smokers were on the flights, the individual flight attendant's duties on the aircraft, the duration of each flight, and the time of day of each flight. Moreover, the allocation of liability under the various comparative fault rules would involve the individual knowledge of each plaintiff and would require examination of the extent to which each individual flight attendant volunteered for the flights. The Court notes that all these international flights were allocated by seniority and could be refused by plaintiffs at any time. Affidavit of Brian Moreau, docket no. 78, ¶¶ 3—11. Therefore, in determining causation and present injury for each member of the proposed class—two key elements of the cause

of action—the jury's decision would turn on each plaintiff's individualized facts.

▮ Second, legal variations prevent common issues from predominating. *Amchem* and *Zinser* both note that distinctions in state laws compound the factual differences, making certification improper. *Amchem,* 521 U.S. at 624, 117 S.Ct. 2231; *Zinser,* 253 F.3d at 1189 ("[D]ifferences in state law will compound the disparities among class members from the different states.") (internal citations omitted). Several other circuits have also recognized this problem. *Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014, 1024 (11th Cir.1996); *Castano v. American Tobacco Co.,* 84 F.3d 734, 741 (5th Cir.1996); *Georgine v. Amchem,* 83 F.3d 610, 618 (3d Cir.1996) (noting that differences in each individual's claim, "when exponentially magnified by choice of law considerations, eclipse any common issues in this case"); *In re American Medical Sys. Inc.,* 75 F.3d 1069, 1085 (6th Cir.1996) ("If more than a few laws of the fifty states differ, the district judge would face the impossible task of instructing the jury on the relevant law."). For example, the *Zinser* court rejected a class that involved 48 states *Zinser,* 253 F.3d at 1189. The panel found that variances between state laws posed serious hurdles in creating a manageable trial plan and in crafting instructions for the jury, even if some of the legal issues remained the same in all states. *Id.* at 1189–90. Finally, when a request for class certification encounters differing state laws, the burden is on the party seeking certification to "creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.' " *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir.1986) (citations omitted); *see also, Adams v. Kansas City Life Ins. Co.,* 192 F.R.D. 274, 278 (W.D.Mo.2000) (finding that plaintiff did not meet burden despite submitting a series of tables showing that the elements of plaintiff's tort claims are similar in every state).

This case would implicate the laws of Washington, Michigan, Minnesota, Illinois and New York. As described earlier, the laws of negligence and medical monitoring differ from state to state and often remain ambigu-

ous. *See In Re Rhone–Poulenc Rorer, Inc.* 51 F.3d 1293, 1300–01 (7th Cir.1995); *see also Badillo,* 16 P.3d at 441 ("Nor is there agreement whether present physical injury is required ... [s]ome jurisdictions do not require present physical injury, while others do."). In addition, the various schemes applicable here for allocating comparative fault [14] would require individualized determinations of the fault of each individual plaintiff in order to determine the corresponding reduction in each plaintiff's recovery [15] or even whether a plaintiff could recover any damages.[16] Such a determination could not fairly be reserved for a bifurcated second phase of trial, because comparisons of relative fault would need to be made at the time the defendant's fault is determined. The potential differences would compound the severe factual differences already outlined. The plaintiff has failed to carry her burden in demonstrating a "suitable and realistic plan for trial of the class claims" that would accommodate the differences. *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 454 (D.N.J.1998).

The situation here differs from those negligence class actions where common questions have been held to predominate over individual questions. Certification under rule 23(b)(3) has been held to be appropriate where the only real difference between plaintiffs is the remedy available. *See Hanlon,* 150 F.3d at 1022; *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988). In *Hanlon,* the Ninth Circuit certified a class although the case invoked the laws of several states, because the *Hanlon* court emphasized that the class excluded personal injury claims, which are highly individualized, so the only serious differences involved the remedies the plaintiffs could seek. *Hanlon,* 150 F.3d at 1022–23. Similarly, certification has been found appropriate in instances like transportation disasters where there will be little or no application of individual defenses. *See, e.g., Sala v. National R.R. Passenger Corp.,* 120 F.R.D. 494, 498 (E.D.Pa.1988). This case presents far more individual variations than seen in these instances.

The proposed class here would face the personal injury issue squarely, encompassing those with present injuries who must prove those injuries to recover, along with those whose state law may not require them to prove the injury; those who have smoked and those who have not; and those who can seek a medical monitoring stand alone cause of action and those who cannot. The individualized issues of those plaintiffs would predominate in the litigation Certification under Rule 23(b)(3) is inappropriate, and the plaintiff's motion will be DENIED.[17]

### Conclusion

For the foregoing reasons, the defendant's motion for summary judgment on the medical monitoring cause of action is GRANTED. Washington does not recognize an indepen-

---

**14.** There would be different approaches to comparative fault if the case were certified to include persons from other states. *See generally,* Henry Woods & Beth Deere, *Comparative Fault* § 1.11 (3d ed.1996). Michigan, New York, and Washington all follow the "pure comparative fault model," whereby the plaintiff's recovery is reduced in direct proportion to the plaintiff's fault. *Placek v. Sterling Heights,* 405 Mich. 638, 275 N.W.2d 511, 514 (1979); N.Y. C.P.L.R. 141 (McKinney's 2001); Wash. Rev.Code § 4.22.005 (2001). Illinois and Minnesota follow the "New Hampshire plan," where the plaintiff must be less negligent than the defendant to recover while a finding of equal negligence allows the plaintiff to recover 50% of her damages. 735 Ill. Comp. Stat. 5/2–1116 (2001); Minn.Stat. § 604.01 (2000). Illinois, however, adopted the provision allowing 50% recovery where fault is equal in 1995, which might require different treatment for plaintiffs from Illinois. 735 Ill. Comp. Stat. 5/2–1116 ("This amendatory Act of 1995 applies to causes of action accruing on or after its effective date.").

**15.** For plaintiffs from Michigan, New York, and Washington.

**16.** For plaintiffs from Illinois and Minnesota.

**17.** The Court would reach the same conclusion even if Washington recognized a independent tort of medical monitoring. Although the named plaintiff would no longer need to prove a present injury, plaintiffs in other states still might be required to carry that burden under their states' version of medical monitoring claim. Moreover, the individual differences in the flight attendants' situations, such as whether they smoked, how long they spent on flights, and their level of knowledge regarding the dangers still would be at issue. The individualized factual issues would remain predominant, as would the ambiguity and conflict among the state laws.

dent tort for medical monitoring, although a plaintiff may pursue medical monitoring as a remedy to another existing cause of action. Plaintiff's motion for class certification is DENIED. While the proposed class meets the requirements of Rule 23(a), the medical monitoring fund sought by the plaintiff is monetary in nature and cannot satisfy the requirement of Rule 23(b)(2). The individualized factual and legal issues of the proposed class also predominate in this litigation and preclude class certification under Rule 23(b)(3).

IT IS SO ORDERED.