FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 DEC 23 AM 9: 04



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| Estate of Yolanda "Lani" Sough, | ) | No. 68155-9-I |
| Deceased, | ) | DIVISION ONE |
| ROBERT SLOUGH, | ) |  |
| Appellant, | ) | UNPUBLISHED |
| v. | ) | FILED: <u>December 23, 2013</u> |
| CHRISTINE CALDERBANK, | ) |  |
| Respondent. | ) |  |

Cox, J. — Robert Slough appeals the summary dismissal of his claims on appeal from decisions of an arbitrator who was appointed after the commencement of this Trust and Estate Dispute Resolution Act (TEDRA) proceeding. Because the superior court had the authority to review all of these decisions, we hold that the court erroneously granted the motion to dismiss Slough's timely appeal and request for a trial de novo. We also hold that there are genuine issues of material fact for trial. Accordingly, we reverse and remand for further proceedings.

This case has a somewhat convoluted procedural history. But the events leading up to the commencement of this litigation are less complicated.

*Pre-Litigation Events*

Yolanda "Lani" Slough died on October 27, 2005. Her widower is Robert Slough. Her daughters, Carolynne Mary DeNike and Christine Ann Calderbank, are the beneficiaries under Lani Slough's will ("the beneficiaries"). The principal asset of the estate is the house Lani Slough acquired before marriage.

Lani Slough appointed her grandson, Adam Kane, as executor. For reasons not relevant to this appeal, he was later removed. Robert Slough was then appointed to be the estate's administrator in March 2009.

At oral argument for this case on appeal, counsel for Slough represented to this court that Slough filed an inventory in which he asserted his interest in an equitable community property lien against the house. It is undisputed that Slough never filed a creditor's claim in the estate of Lani Slough. It is also undisputed that he lived in her house during the time he was the administrator but never paid rent to the estate.

*TEDRA Proceedings*

In March 2010, the beneficiaries commenced this TEDRA proceeding, claiming that Slough had not distributed the estate, including the house. The petition alleged that the house was Lani Slough's separate property, bought before her marriage to Slough. The beneficiaries asked the court for a declaration that the home was separate property, that the estate was entitled to rent from Slough for living in the home, and that any alleged community lien in

2

his favor was time-barred for failure to file a creditor's claim within 24 months of Lani Slough's death pursuant to RCW 11.40.051.

A court commissioner determined that the house was Lani Slough's separate property.[1] The court also ordered the parties to TEDRA mediation, enumerating further issues: "(a) rent due to the estate from Mr. Slough to the estate; (b) whether there is any equitable lien in favor of the community; (c) whether such lien would be barred by RCW 11.40.051."[2]

In the Stipulation and Order to Compel Arbitration, the parties stipulated that "arbitration would more efficiently and effectively resolve [the issues previously identified in the order to mediate]."[3] They also stipulated to arbitrate before a mutually agreed upon arbitrator.[4] The order provides that this arbitrator would resolve the issues previously enumerated in the order to mediate.[5]

We note that this stipulation and order in the record before us does not contain the signature of either a judge or court commissioner. At oral argument, counsel for Slough represented that the stipulation and order was signed by a judicial officer. Counsel for the beneficiaries did not contest this representation. Accordingly, we assume for purposes of our analysis that arbitration of the enumerated issues was both agreed and ordered.

---

[1] Clerk's Papers at 32.

[2] Id. at 31.

[3] Id. at 34.

[4] Id. at 35.

[5] Id.

The parties proceeded to arbitration, and the enumerated issues were resolved in several hearings.

At the first hearing, the arbitrator considered whether RCW 11.40.051, a creditor's claim statute, applied to bar Slough's claim to an equitable lien against the house. The arbitrator determined that any equitable lien that Slough had was barred because he failed to timely file a creditor's claim. Accordingly, he granted the beneficiaries' motion for summary judgment as to this claim.

Following this hearing, the beneficiaries moved in the superior court for a decree of partial distribution ordering Slough to distribute the house to them. The court granted this motion. In an order entered several months later, the court reiterated that "[t]he house shall not be returned to the estate" and that "[the beneficiaries] own the house free and clear . . . ."[6]

At the second hearing, the arbitrator considered a collateral issue—whether the arbitrator had the authority to award attorney fees and costs to the beneficiaries for the first hearing. The arbitrator concluded: "While the Court originally required a TEDRA mediation, the parties themselves bypassed the mediation step and *contractually* agreed to an arbitration, enumerating the issues to be resolved. The Stipulation did not expand on the enumerated issues nor did it make the proceeding a TEDRA arbitration."[7] Accordingly, he concluded that he did not have the authority to award fees and costs, but he stated that

---

[6] Id. at 40.

[7] Id. at 91 (emphasis added).

4

"[t]he TEDRA matter still exists and both parties are free to seek an award of attorney's fees from the court . . . ."[8]

At the third hearing, the arbitrator considered the issue of rent due to the estate from Slough. Following this hearing, the arbitrator issued an interim award against Slough on November 29, 2010. A few months later, the arbitrator determined the amount of prejudgment interest. On February 16, 2011, the arbitrator entered a final award against Slough, determining that Slough owed $37,400 for rent and $4,612 for prejudgment interest.

Because the arbitrator previously determined that he did not have the authority to award attorney fees, the beneficiaries moved in the superior court to compel arbitration and grant the arbitrator authority to determine an award of attorney fees pursuant to the TEDRA statute. The court ordered another arbitration hearing "[p]ursuant to [the TEDRA arbitration statute]" on the issue of attorney fees and costs incurred in the arbitration hearings on the enumerated issues.[9]

This fourth arbitration hearing was expressly conducted pursuant to the TEDRA statute. The arbitrator determined that the amounts stated in the billing statements were reasonable. He granted the beneficiaries' request for attorney fees and entered an award against Slough on July 26, 2011.

---

[8] Id. at 92.

[9] Id. at 51.

*Appeal to Superior Court*

On March 15, 2011, 28 days after the entry of the final award, Slough appealed the final decision of the arbitrator and requested a trial de novo on all issues of law and fact. Additionally, after the fourth hearing related to attorney fees, Slough renewed his appeal of the final decision dated February 16, 2011 and also appealed the subsequent decision dated July 26, 2011, requesting a trial de novo on all issues of law and fact.

In November 2011, the beneficiaries moved to dismiss for lack of subject matter jurisdiction on appeal. Additionally, they moved to dismiss because there were allegedly "no remaining triable issues."[10] The beneficiaries also moved, in the alternative, for summary judgment on the rent and prejudgment interest issues as well as the attorney fees issue. Finally, they requested attorney fees incurred in the superior court appeal of the arbitrator's award of attorney fees.

The court granted both motions in its order granting defendants' motion for summary judgment dated December 2, 2011.

This appeal followed.

## MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Slough argues that the trial court erred in dismissing his request for a trial de novo for lack of "subject matter jurisdiction."[11] Because the arbitration

---

[10] Id. at 11.

[11] The trial court used the term "subject matter jurisdiction" in its order granting summary judgment. But the trial court was actually referring to its "authority" to review his claims. See ZDI Gaming Inc. v. State ex rel. Wash. State Gambling Com'n, 173 Wn.2d 608, 617-18, 268 P.3d 929 (2012) ("'Jurisdiction is the power and authority of the court to act.' Subject matter

6

hearings were all conducted pursuant to TEDRA and his request for a trial de novo of the arbitrator's final decision was timely, we agree.

When reviewing an order of summary judgment, an appellate court engages in the same inquiry as the trial court.[12] The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[13] Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[14] The motion should be granted only if reasonable persons could reach but one conclusion.[15]

*Authority to Review*

In order to determine whether the court had the authority to review Slough's appeal, we are faced with two issues. First, we decide whether the underlying arbitration hearings were conducted pursuant to TEDRA. Second, we decide whether Slough's appeal was timely.

---

jurisdiction is a particular type of jurisdiction, and it critically turns on 'the type of controversy.'") (citations omitted) (internal quotation marks omitted) (quoting Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 315-16, 76 P.3d 1183 (2003)). There is no dispute that the superior court has subject matter jurisdiction to decide TEDRA matters.

[12] Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 381, 46 P.3d 789 (2002).

[13] Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co., 81 Wn.2d 528, 530, 503 P.2d 108 (1972).

[14] CR 56(c).

[15] Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 83, 60 P.3d 1245 (2003).

The first issue is whether the underlying hearings were conducted pursuant to TEDRA. Two statutes guide our analysis. The first is RCW 11.96A.270, which discusses the intent of TEDRA. The second is RCW 11.96A.310, which sets forth the strict TEDRA arbitration procedure.

As RCW 11.96A.270 indicates, the intended progression under the TEDRA statutory scheme is to start in mediation and then proceed to arbitration.[16] RCW 11.96A.270 states:

> The intent of **RCW 11.96A.260 through 11.96A.320** is to provide for the efficient settlement of disputes in trust, estate, and nonprobate matters through mediation and arbitration **by providing any party the right to proceed first with mediation and then arbitration** before formal judicial procedures may be utilized.[17]

Here, the parties followed this logical progression through this TEDRA statute. There is no dispute that this matter was initiated under TEDRA: the beneficiaries filed a TEDRA petition. The court then ordered the parties to resolve three enumerated issues at mediation, specifically ordering that this be done under TEDRA.

The parties determined that arbitration would be more efficient and effective, so they stipulated to arbitrate. The court then ordered arbitration on the basis of this stipulation. The issues to be resolved at arbitration were the same three enumerated issues for which the court initially ordered TEDRA mediation. There is no indication in the record that the parties mutually and objectively intended to take this matter out of the TEDRA statutory scheme under which it

---

[16] See RCW 11.96A.270.

[17] (Emphasis added.)

8

began. Rather, this record shows that they intended to proceed as outlined by the statute.

The parties were authorized to proceed directly to arbitration for two reasons. First, because the parties' counsel agreed not to use the mediation procedures, and second, because the court ordered that the matter be submitted to arbitration when it entered the stipulated order. Both of these reasons are valid under RCW 11.96A.310(1), which provides for four circumstances when arbitration is available:

> (a) a party has first petitioned for mediation under [TEDRA's mediation procedure statute] and such mediation has been concluded; (b) the court has determined that mediation under [TEDRA's mediation procedure statute] is not required and has not ordered that the matter be disposed of in some other manner; (c) **all of the parties or the parties' virtual representatives have agreed not to use the mediation procedures** of [TEDRA's mediation procedure statute]; or (d) **the court has ordered that the matter must be submitted to arbitration**.[18]

Moreover, the parties were permitted to bypass the rigid formalities for commencement of arbitration that are set forth in RCW 11.96A.310(2). That is because RCW 11.96A.270 also states: "[A]ny of the requirements or rights *under RCW 11.96A.260 through 11.96A.320 are subject to any contrary agreement between the parties or the parties' virtual representatives*."[19] Plainly, this includes RCW 11.96A.310(2), and in this case, the parties made such a "contrary agreement."

---

[18] (Emphasis added.)

[19] (Emphasis added.)

Finally, the very intent of the TEDRA statutory scheme is to provide for efficient resolution of disputes by methods of alternate dispute resolution.[20] Our conclusion is consistent with this policy—to promote efficient settlement, rather than to impose strict procedural requirements.

In sum, TEDRA expressly allows for parties to move from TEDRA mediation to TEDRA arbitration without following the procedures specified in RCW 11.96A.310(2). The underlying arbitration hearings in this case were all conducted pursuant to TEDRA.

The beneficiaries argue that this was not a TEDRA arbitration because it was not initiated properly under TEDRA's arbitration procedures, specified in RCW 11.96A.310. They are wrong. As discussed above, because there was a contrary agreement between the parties, they did not have to initiate arbitration in accordance with this statute.

Additionally they are wrong because the procedures set forth in RCW 11.96A.310 do not address this particular situation. According to RCW 11.96A.310(2), arbitration "must" be commenced in one of the following two ways:

> (a) If the matter is not settled through mediation under [TEDRA's mediation procedure statute], or the court orders that mediation is not required, a party may commence arbitration by serving written notice of arbitration on all other parties or the parties' virtual representatives. The notice must be served no later than twenty days after the later of the conclusion of the mediation procedure, if any, or twenty days after entry of the order providing that mediation is not required. If arbitration is ordered by the court under [a

---

[20] See RCW 11.96A.270.

subsection of TEDRA's mediation procedure statute], arbitration must proceed in accordance with the order.

(b) If the parties or the parties' virtual representatives agree that mediation does not apply and have not agreed to another procedure for resolving the matter, a party may commence arbitration without leave of the court by serving written notice of arbitration on all other parties or the parties' virtual representatives at any time before or at the initial judicial hearing on the matter. After the initial judicial hearing on the matter, the written notice required in subsection (1) of this section may only be served with leave of the court.

But this provision does not address the facts in this case, where **both** parties commenced arbitration by stipulation and an agreed order followed an order to mediate. Rather, this provision outlines the procedure to follow when **one party** wants to commence arbitration. This distinction is important. If a single party commences arbitration under this statute, it is logical that the statute would require written notice to be served upon the other parties. But if both parties commence arbitration together, the requirement of serving written notice is unnecessary. Accordingly, the parties did not need to follow the procedural requirements of RCW 11.96A.310(2). We reject the beneficiaries' argument to the contrary.

The next issue is whether Slough's request for a trial de novo was timely. We conclude that it was.

Slough had 30 days to request a trial de novo under TEDRA, as RCW 11.96A.310(9)(a) states:

The final decision of the arbitrator may be appealed by filing a notice of appeal with the superior court requesting a trial de novo on all issues of law and fact. The notice of appeal must be filed within **thirty days after the date on which the decision was**

*served on the party filing the notice of appeal.* A trial de novo shall then be held, including a right to jury, if demanded.[21]

Furthermore, under TEDRA, "The arbitrator shall issue a final decision in writing within thirty days *of the conclusion of the final arbitration hearing.*"[22] Accordingly, Slough had thirty days to request a trial de novo from the conclusion of the third arbitration hearing, which was the last hearing on the enumerated issues. It is undisputed that his request on March 15 was made within 30 days of that date. Because TEDRA arbitration does not require a request for a trial de novo until the final arbitration decision, Slough timely sought review of all decisions of the arbitrator, including that of the first hearing.

Accordingly, Slough's request for a trial de novo on all issues of law and fact was timely.

The beneficiaries argue that Slough's request for a trial de novo was not timely because it was not made within 20 days of the issuance of the award. They are again wrong.

They rely on Mandatory Arbitration Rule 7.1, which requires that a request for a trial de novo from certain arbitrations be filed within 20 days. The problem with their argument is that the arbitration at issue was conducted pursuant to TEDRA, not the type of arbitration to which MAR 7.1 refers. Thus, reliance on this rule is misplaced.

---

[21] (Emphasis added.)

[22] RCW 11.96A.310(7) (emphasis added).

12

In sum, Slough is entitled to a trial de novo on all enumerated issues, as the stipulation and order to arbitrate provides.

Although Slough's arguments both below and on appeal are not entirely clear, he appears to be making several substantive arguments on appeal. He first claims that cases cited for the proposition that he had a duty to pay rent are distinguishable. He next claims that he is entitled to a setoff against amounts assessed in favor of the estate. He further claims that the measure of this claimed setoff is his interest in the marital community's equitable lien against the house, which was the deceased's separate property. We address these claims in turn.

### Duty to Pay Rent

Slough first argues that he did not have a duty to pay rent. We disagree.

Until an estate is closed, the heirs may not treat the estate's real property as their own.[23] Rights to the property may arise from the status of being the executor.[24] Under In re Estate of Jones, "[a]n executor is entitled to possess and control estate property during the administration of the estate and has a right to it even against other heirs."[25] But "[w]here a person's only right to possession of the property arises from his status as executor, he does not have a right to remain on and use the property when there are other reasonable alternatives

---

[23] In re Estate of Jones, 152 Wn.2d 1, 14, 93 P.3d 147 (2004).

[24] See id.

[25] 152 Wn.2d 1, 14, 93 P.3d 147 (2004).

13

open (e.g., renting the property)."[26] In re Estate of Boston further explains: "Where there are reasonable alternatives open, particularly alternatives which would produce rents and profits from the property, an executor has no right to remain on and to use the property."[27]

Here, Slough is required to pay rent. He did not contest at the summary judgment motion that he continued to occupy his deceased wife's property. Moreover, Slough was not an heir to this property. Any right to the property arose from his status as the personal representative, not as an individual.

Slough disputes that his only right to occupy the house was because he was the personal representative of the estate. He argues that he was occupying it as a partial owner. This record does not support any claim to ownership of the house. The house was Lani Slough's separate property because it was acquired before her marriage to Slough. This argument is unfounded.

Slough also contends that he occupied the estate solely for his own benefit. But Slough offered no support for this argument at the time of summary judgment. Moreover, courts have held that personal representatives must pay rent "even where [a personal representative] claims to remain on the property to protect it from vandalism and decay."[28] Thus, this argument is not persuasive.

Slough also argues that there were not reasonable alternatives available to his occupancy of the property. He offered no support for this at the time of

---

[26] Id.

[27] 80 Wn.2d 70, 72, 491 P.2d 1033 (1971).

[28] Jones, 152 Wn.2d at 14.

14

summary judgment. In any event, Slough's argument on appeal misconstrues the rule articulated in Jones[29] and Boston.[30] Those cases discuss reasonable alternatives *for the estate*, not reasonable alternatives for the personal representative or executor. Slough does not argue that there were not reasonable alternatives for the estate. His argument is not analytically relevant.

In sum, Slough's arguments do not defeat his duty to pay rent. We deal with the amount, duration, and prejudgment interest on such rent later in this opinion.

*Claim to Setoff by Equitable Lien*

Slough next argues that he can claim a setoff against any amounts he owes the estate. Specifically, he argues that he has a substantial equitable claim against the estate measured by his half interest in the marital community's equitable lien against the separate property of the deceased. At oral argument, Slough expressly disclaimed any interest in the house itself in response to questioning from this court. The house is no longer an asset of the estate. Slough could not identify the amount of his equitable claim.

There are two issues arising from Slough's arguments. The first is whether the court below properly determined that his failure to file a creditor's claim barred the assertion of an equitable lien. The second is whether such a lien, if not barred by the statute, may be used as a setoff.

---

[29] 152 Wn.2d 1, 14, 93 P.3d 147 (2004).

[30] 80 Wn.2d 70, 72, 491 P.2d 1033 (1971).

The arbitrator decided, among other things, that Slough's equitable lien claim was barred because he failed to file a creditor's claim under RCW 11.40.051. It appears that the superior court agreed. This was error.

RCW 11.40.051 provides time limits for claims against a decedent. It states that "a person having a claim against the decedent *is forever barred* from making a claim or commencing an action against the decedent . . . unless the creditor presents the claim . . . within twenty-four months after the decedent's date of death."[31] This is a nonclaim statute.[32]

A nonclaim statute "create[s] a substantive right or obligation and an inherent corresponding time period in which the right or obligation must be exercised."[33] This type of statute is different from a statute of limitations. "[N]onclaim statutes create and destroy rights, while limitations statutes merely extinguish the ability to seek a remedy, without creating or destroying the underlying rights themselves."[34]

After carefully reviewing the record before us, it appears that Slough argued below that he was not required to comply with the provisions of RCW 11.40.051 because he asserted an equitable lien against specific property, the house. In his written response to the beneficiaries' motion for summary

---

[31] RCW 11.40.051 (emphasis added).

[32] 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: HANDBOOK ON CIVIL PROCEDURE § 1.3 (2013).

[33] Id. (citing Lane v. Dep't of Labor and Indus., 21 Wn.2d 420, 151 P.2d 440 (1944)).

[34] Williams v. State, 76 Wn. App. 237, 247, 885 P.2d 845 (1994).

judgment, he stated that position, but he failed to support it with any citation to authority.[35] But during oral argument on this motion, he cited two cases to support his position:[36] Compton v. Westerman[37] and O'Steen v. Estate of Wineberg.[38] There is no indication in the record that he provided the court with copies of these cases either at the hearing or anytime thereafter. But these cases are consistent with his argument that a claim to specific property is not barred by the failure to file a creditor's claim against his wife's estate.[39]

Two supreme court cases, neither of which either party to this appeal cited either below or on appeal, are dispositive.

In Olsen v. Roberts, the supreme court considered Olsen's claim against her deceased former husband's estate to recover one half of former community property.[40] The complaint failed to allege that the claim was filed within six months after publication of notice to creditors.[41] But the supreme court reversed the dismissal of her claim, concluding that her petition was not a claim for a debt, and that Olsen was not a creditor.[42]

---

[35] Clerk's Papers at 109-10.

[36] Report of Proceedings (Dec. 2, 2011) at 20.

[37] 150 Wash. 391, 273 P. 524 (1928).

[38] 30 Wn. App. 923, 640 P.2d 28 (1982).

[39] See Compton, 150 Wash. at 396-97; O'Steen, 30 Wn. App. at 934.

[40] 42 Wn.2d 862, 862-65, 259 P.2d 418 (1953).

[41] Id. at 865.

[42] Id.

In reaching that result, the supreme court cited to Bancroft's Probate Practice:

> "To constitute a claim against the estate of a deceased person, an obligation must consist of a debt incurred by or for the decedent during his lifetime.
>
> . . .
>
> Where, on the other hand, the recovery of specific property is sought on the ground that such property is impressed with a trust for the benefit of the person claiming it, and the particular property is properly identified or traced, the matter is not one of claimed indebtedness but of an assertion that the particular property is no[t] part of the general assets of the estate. No claim, therefore, need be presented in such case as a condition to action to recover the property or impress it with the trust."[43]

The court also stated the rule as follows: "'[P]resentation of a claim or demand has been held unnecessary in actions . . . for the recovery of specific property. . . .'"[44]

Smith v. McLaren involved circumstances similar to Olsen.[45] There, Bess Smith brought a claim for a one-half interest in community property.[46] At issue was whether a motion to dismiss should have been granted because no creditor's claim was filed.[47] Again, the supreme court held that a creditor's claim was not required.[48] It stated: "[Smith] does not claim that the estate is indebted

---

[43] Id. (quoting 3 BANCROFT'S PROBATE PRACTICE (2d ed.) 512, 526, §§ 772, 778).

[44] Id. (alterations in original) (quoting 21 AM. JUR. 579, § 348).

[45] 58 Wn.2d 907, 365 P.2d 331 (1961).

[46] Id. at 908-09.

[47] Id. at 909.

[48] Id.

to her, but rather seeks to establish her interest in specific property. . . ."[49] It reiterated its conclusion from Olsen: "[T]he filing of a creditor's claim is not a condition precedent to an action by a former spouse to recover his or her share of community property accumulated during the marriage . . . ."[50]

In sum, Olsen and Smith are binding precedent that this court must follow. Both cases establish that Slough was not required to file a creditor's claim in this case. That is because he asserted an equitable lien claim to specific property of the estate, his wife's house. The matter was not one of "claimed indebtedness."[51]

The second question is whether Slough may use the claimed equitable lien as a setoff notwithstanding there is no requirement for him to have filed a creditor's claim.

The parties have not adequately addressed in their briefing the effect on Slough's claim to a setoff in light of our holding that he is not required to comply with the creditor's claim statute. On remand, they will have the opportunity to do so.

*Amount of Rent and Interest*

In its motion for summary judgment before the trial court, the beneficiaries argued, in the alternative, that if the trial court did have authority to hear certain

---

[49] Id.

[50] Id.

[51] See Olsen, 42 Wn.2d at 865.

matters, summary judgment on the rent and prejudgment interest issues was proper.

In their summary judgment motion, the beneficiaries argued that, as a matter of law, Slough had a duty to pay rent to the estate for living in the house and that there was no genuine issue of material fact regarding the amount of that rent.

First, the beneficiaries cited to Jones[52] and Boston[53] for the rule that personal representatives must pay rent. The beneficiaries argued that Slough should pay $2,000 per month for the 19 months and 21 days that he served as personal representative. Next, the beneficiaries pointed to RCW 59.04.050 for the authority that Slough also owed rent as a tenant at sufferance, for the time prior to his appointment as personal representative. The beneficiaries claimed this was for a period of 40 months and 14 days. Finally, the beneficiaries asserted that Slough owed prejudgment interest on fixed amounts at a rate of 12 percent.

We have carefully reviewed Slough's written opposition to the summary judgment motion. Slough did not contest that $2,000 was a fair market rental value. In fact, it was Slough's own expert who determined that value. Additionally, Slough did not contest the amount of time that he resided in the house. And he did not contest either the method of calculation or amount of prejudgment interest on the principal obligations that the beneficiaries claimed.

---

[52] 152 Wn.2d 1, 93 P.3d 147 (2004).

[53] 80 Wn.2d 70, 491 P.2d 1033 (1971).

20

On this record, it appears that both the amount of rent and amount of prejudgment interest are "facts that appear without substantial controversy," as CR 56(d) expressly provides. As such, they should be "deemed established," as that rule provides, on remand.

## ATTORNEY FEES

The awards of attorney fees both for the underlying arbitration hearings and on review by the superior court are at issue. Likewise, the beneficiaries also request the award of fees for this appeal. We consider separately each claim for fees.

### Arbitration

The beneficiaries argue that summary judgment on the issue of attorney fees and costs for the underlying arbitration was proper. We disagree.

A party may recover reasonable attorney fees or expenses if applicable law grants the party that right and the party devotes a section of its opening brief to the request.[54] In Washington, "attorney fees may be awarded only when authorized by a private agreement, a statute, or a recognized ground of equity."[55]

An arbitrator has the authority to award fees based on RCW 11.96A.310(6): "The arbitrator may order costs, *including reasonable*

---

[54] RAP 18.1(a), (b).

[55] Fisher Props, Inc. v. Arden-Mayfair, Inc., 106 Wn.2d 826, 849-50, 726 P.2d 8 (1986).

*attorneys' fees* and expert witness fees, to be paid by any party to the proceedings *as justice may require*."[56]

The first question is whether attorney fees were awardable to the beneficiaries under the circumstances of this case. The second question is whether the amount of such fees was reasonable.

The arbitrator's discretionary award of fees to the beneficiaries appears to have been based, in part, on the erroneous basis that Slough's claim to an equitable lien was barred by the creditor's claim statute. For the reasons we have already explained in this opinion, that was error. Whether and, if so, to what extent fees would have been awarded to the beneficiaries had this error not been made are unknown. Accordingly, we vacate the award of attorney fees by the arbitrator and remand for reconsideration of these questions.

*Trial De Novo*

The beneficiaries also argue that the award of fees by the superior court on de novo review is also proper. We again disagree.

The basis of an award of attorney fees on de novo review of an arbitrator's decision in a TEDRA proceeding is RCW 11.96A.310(10). That statute provides:

> The **prevailing party** in any such de novo superior court decision after an arbitration result must be awarded costs, including expert witness fees and **attorneys' fees**, in connection with the judicial resolution of the matter. Such costs shall be charged against the nonprevailing parties in such amount and in such manner as the court determines to be equitable. The provisions of this subsection take precedence over the provisions of RCW 11.96A.150 or any other similar provision.[57]

---

[56] (Emphasis added.)

[57] (Emphasis added.)

22

The court noted that Slough instituted the request for a trial de novo and that the beneficiaries were the prevailing parties.[58] But, as we explained earlier in this opinion, this conclusion is not entirely correct. Rather, Slough should have prevailed on his argument that his claim to an equitable lien was not barred by the creditor's claim statute. Accordingly, we vacate the award of fees to the beneficiaries for the trial de novo and remand for reconsideration of whether an award is warranted. If the court determines an award is warranted, it may then determine the amount of such an award.

### On Appeal

The beneficiaries request attorney fees and costs as prevailing parties to this appeal. Because both sides prevailed, in part, on substantial issues, we deny the request for fees on this appeal.

The applicable statutory scheme here is RCW 11.96A.150(1). It provides that a court on appeal "may, in its discretion, order costs, including *reasonable attorneys' fees*, to be awarded to any party . . . ."[59] The court may order such amounts "as the court determines to be equitable."[60]

---

[58] Clerk's Papers at 138-39.

[59] RCW 11.96A.150(1) (emphasis added).

[60] Id.

Moreover, "[w]here neither party wholly prevails, the 'party that substantially prevails on its claim is the prevailing party.'"[61]

Here, under TEDRA, this court's decision to award fees is discretionary. Exercising our discretion, we deny the request for fees. Both sides prevailed on substantial issues in this appeal.

## MOOTNESS

Finally, the beneficiaries argue that Slough's appeal should be dismissed as moot because it gives no avenue for relief to Slough. We disagree.

When an appeal is moot, it should be dismissed.[62] An appeal is moot if it presents "purely academic issues and where it is not possible for the court to provide effective relief."[63]

Here, as counsel for Slough made clear at oral argument in this court, there is an issue regarding setoff of claims Slough asserts against the rent, prejudgment interest, and attorney fees assessed against him. Counsel candidly admitted at oral argument that Slough's practical objective is either to diminish or extinguish entirely these assessments by way of setoff. This candid admission is without waiving the legal claim that his claimed equitable lien might exceed these assessments.

---

[61] Peterson v. Koester, 122 Wn. App. 351, 364, 92 P.3d 780 (2004) (quoting Mike's Painting, Inc. v. Carter Welsh, Inc., 95 Wn. App. 64, 68, 975 P.2d 532 (1999)).

[62] Klickitat County Citizens Against Imported Waste v. Klickitat County, 122 Wn.2d 619, 631, 860 P.2d 390 (1993).

[63] Id.

In clarifying the position of Slough, counsel also made clear that he does not assert any interest in the house itself because it is no longer part of the estate. In sum, this is no mere contest over academic issues. This appeal is not moot.

We reverse the order granting the motion to dismiss summary judgment, deny the request for attorney fees on appeal, and remand for further proceedings.

_Cox, J._

WE CONCUR:

_Leach, C.J._                    _Becker, J._